Alfonso GARCIA, A/K/A Alonzo Ramirez Garcia, A/K/A Alonzo Garcia, Appellant,

v.

The STATE of Texas, Appellee.

No. 13-92-679-CR.

Court of Appeals of Texas, Corpus Christi.

May 12, 1994.

Floyd D. Holder, Law Firm of Floyd Holder, Sam Medina, Lubbock, for appellant.

Theodore C. Hake, Asst. Crim. Dist. Atty., Rene Guerra, Dist. & County Atty., Hildago County Courthouse, Edinburg, Cynthia A. Morales, Asst. Crim. Dist. Atty., Nueces County Courthouse, Corpus Christi, for appellee.

Before SEERDEN, C.J., and GILBERTO HINOJOSA, and FEDERICO G. HINOJOSA, Jr., JJ.

## OPINION

SEERDEN, Chief Justice.

Appellant pled guilty before a jury to murdering Eluterio Villarreal, III, and the jury assessed his punishment at 80 years in prison. We affirm.

In his first point of error, appellant contends that Tex.Gov't Code Ann. § 74.-053(b) (Vernon Supp.1994) violates the equal protection clause of the Fourteenth Amendment. This section permits civil litigants to recuse assigned former judges automatically

but denies criminal litigants the same power.[1] Appellant asserts that it is improper to treat criminal and civil defendants differently.

The Equal Protection clause allows the legislature considerable leeway to enact legislation that may appear to affect similarly situated people differently. *Clark v. State,* 665 S.W.2d 476, 480 (Tex.Crim.App.1984). Absent an interference with the exercise of a fundamental right or a burden on a suspect class, classifications will not be set aside on equal protection grounds if they are rationally related to a legitimate state interest. *Id.* Alternatively stated, the test is whether the challenged classification rests on grounds wholly irrelevant to achievement of a valid state objective. *Id.* at 481.

In *Lanford v. Fourteenth Court of Appeals,* 847 S.W.2d 581, 587 (Tex.Crim.App. 1993), the Court of Criminal Appeals discussed policy reasons for the legislature's decision to grant only civil litigants the right to peremptorily challenge former judges. The Court mentioned that giving such power to the State, a party in all criminal prosecutions, would give the State an inordinate power of influence over former judges. *Id.* The Court also noticed that giving the power to criminal litigants would give prosecutors and defense attorneys the right to receive an automatic continuance any time a former judge presided in a case, a situation that could result in defendants spending more time in already overcrowded jails. *Id.*

Although *Lanford* did not involve an equal protection challenge to § 74.053, the Court's analysis is helpful in assessing whether the legislature's decision to treat civil and criminal litigants differently has a rational basis. Appellant argues that while there may be a reason to treat *the State* differently from civil plaintiffs, there is no rational basis for treating criminal defendants differently from civil defendants. He argues that the criminal defendant, unlike the State, is not a party to every criminal case and has no more power of influence over the judge than a civil defendant. He further argues that any delay resulting from a continuance caused by the defendant's peremptory challenge to the judge is attributable to the accused, not the State, and therefore any resulting delay does not serve as a rational basis for section 74.-053.

We disagree with appellant's arguments. While society does not have a personal "speedy trial right" with respect to a particular defendant, society does have a legitimate interest in disposing of its criminal prosecutions in a timely manner. Therefore, to the extent the absence of automatic continuances promotes the faster disposition of criminal cases, section 74.053 is rational. *Lanford* also recognized the possibility that automatic continuances could place additional burdens on overcrowded jails. Society has a legitimate interest in controlling its jail population. The legislature's decision to deny criminal defendants an automatic continuance is not wholly irrelevant to relieving jail overcrowding. Whether such a policy is a wise or an efficient way to achieve that interest is not subject to our review.

In addition, the legislature did not act irrationally when it chose to eliminate the State's potential power of influence over assigned judges by making the act inapplicable to criminal cases in general. Giving a criminal defendant the power to disqualify the judge while not giving such power to the State would have created a difference in position for the parties to a criminal action. It is rational to keep the parties to a criminal action on an equal footing by denying the power of peremptory challenge to both sides.

---

1. Section 74.053 provides, in part:

   (b) If a party to a civil case files a timely objection to the assignment, the judge shall not hear the case. Except as provided by Subsection (d), each party to the case is only entitled to one objection under this section for that case.

   \*     \*     \*     \*     \*     \*

   (d) A former judge or justice who was not a retired judge may not sit in a case if either party objects to the judge or justice.

We find no equal protection violation. Appellant's first point of error is overruled.

■ By point two, appellant asserts the record fails to show that he knowingly pled guilty to murder instead of voluntary manslaughter. He argues that a plea to "intentionally or knowingly causing the death of another" could amount to a plea to either offense. He then recounts the evidence introduced before the jury and argues that it raises inferences which support voluntary manslaughter. He finally concludes that the record must affirmatively show he understood the distinction between the offenses and, that as the record does not so affirmatively show, the plea was involuntary.

■ It is axiomatic that to be valid, a plea must be voluntary. To determine the voluntariness of a plea, a reviewing court must examine the record as a whole, but once a defendant has pled guilty and attests to the voluntary nature of the plea, a heavy burden is placed on him at a subsequent hearing to show a lack of voluntariness. *Hayden v. State*, 818 S.W.2d 194, 196 (Tex.App.—Corpus Christi 1991, no pet.); *Sawyer v. State*, 778 S.W.2d 541, 543 (Tex.App.—Corpus Christi 1989, pet. ref'd). Other than the assertions in his appellate brief that the plea might be involuntary, appellant has not contested the voluntariness of his plea. He never contended in the trial court that his plea was entered involuntarily. He presented no evidence to show that he misunderstood the consequences of his plea, relied upon false information, or relied on inadequate legal advice when he entered his plea.

Appellant argues, and the record supports his contention, that the trial court never explicitly informed appellant that he was charged with murder. Instead, the prosecutor read the indictment to appellant, and he pled guilty. The trial court then asked appellant whether he had discussed the matter with his attorney. Appellant responded, "Yes, sir." Appellant then answered "yes" to a series of questions asked by the trial judge concerning whether he understood what he was doing. The trial court correctly informed appellant on the punishment range for a first degree felony. Appellant indicated his understanding. The trial court inquired about whether anyone had forced appellant to plead, whether he was threatened, or whether anyone had promised appellant anything. Appellant answered "no" to all these questions. Throughout the admonishments, the trial court never mentioned that the offense was "murder."

In *Logan v. State*, 506 S.W.2d 593, 594 (Tex.Crim.App.1974), the Court stated that the better practice would be to specifically name the offense in addition to reading the indictment. The *Logan* Court, however, found no error in light of the circumstances that the defendant was represented by counsel and that the indictment's allegations were read. The same finding is appropriate here. Appellant was represented by counsel, and the indictment allegations were read. In addition, the trial court correctly admonished appellant on the punishment range. We find no error and overrule point two.

■ Appellant next contends the record fails to show the trial court properly admonished him concerning the waiver of his rights against self-incrimination, to trial by jury, and to confront the witnesses. Appellant's argument is premised on the assumption that a defendant pleading guilty to a jury waives his right to trial by jury. This premise is incorrect. Any plea before a jury has always been considered to be a jury trial. *Williams v. State*, 674 S.W.2d 315, 318 (Tex.Crim.App. 1984). When pleading guilty before a jury, the defendant does not waive his right to confront and cross-examine witnesses. *Id.* There is no requirement that a defendant be informed of his right against self-incrimination at trial upon a plea of guilty. *Id.* at 320. *See Vasquez v. State*, 522 S.W.2d 910, 912 (Tex.Crim.App.1975); *Johnson v. State*, 501 S.W.2d 306 (Tex.Crim.App.1973); *Sims v. State*, 783 S.W.2d 786, 789 (Tex.App.—Houston [1st Dist.] 1990, no pet.). Point three is overruled.

■ In point four, appellant contends that the trial court did not properly admonish him concerning the possibility of deportation. Tex.Code Crim.Proc.Ann. art. 26.-13(a)(4) (Vernon 1989). A complete failure to admonish regarding deportation is reversible error. *Morales v. State*, 872 S.W.2d 753

(Tex.Crim.App.1994) (not yet reported); *Ex parte Cervantes,* 762 S.W.2d 577, 578 (Tex. 1988). The record shows the following exchange regarding deportation:

> THE COURT: Are you a citizen of the United States?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: Do you understand that a conviction in this case, if you're not a citizen or if you're not legally in this country, that it could mean that you would have to be sent back to your original country? That would not be done by this—do you understand that it could happen?
>
> THE DEFENDANT: Does it—I'm not an illegal alien.
>
> THE COURT: You're not?
>
> THE COURT: You're not a citizen, but you're legally in this country?
>
> MR. HARRIS: Correct
>
> THE INTERPRETER: He has a passport. He is not a citizen.
>
> THE COURT: Well, I don't know whether you would have to be sent back or not. I just—I'm not an expert in any way of the immigration laws. But I just wanted to let you know that it could happen depending on the immigration law.
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Nobody knows for sure, I don't believe, but it could happen. Do you understand?
>
> THE DEFENDANT: Yes, sir, I understand.

Article 26.13(a) requires the trial court to admonish the defendant of:

> (4) the fact that if the defendant is not a citizen of the United States of America, a plea of guilty or nolo contendere for the offense charged may result in deportation, the exclusion from admission to this country, or the denial of naturalization under federal law.

The trial court's admonishment did not fully encompass the requirements of article 26.13(a)(4) because the admonishment did not mention exclusion from admission or denial of naturalization. Nonetheless, the trial court did admonish appellant that he could be sent back to his original country.

Substantial compliance with article 26.13(a) is sufficient unless the defendant affirmatively shows that he was not aware of the consequences of his plea and that he was misled or harmed by the admonishment of the court. Tex.Code Crim.Proc.Ann. art. 26.13(c) (Vernon 1989). When an incomplete or incorrect admonishment is given, the burden shifts to the defendant to show that his plea was entered without understanding the consequences. *Ex parte Gibauitch,* 688 S.W.2d 868, 872 (Tex.Crim.App.1985).

We find that the trial court's admonishment, "if you're not a citizen or if you're not legally in this country, that it could mean that you would have to be sent back to your original country," substantially complied with article 26.13(a)(4) as it encompasses the most severe action which could befall appellant. Accordingly, we hold that the burden was on appellant to affirmatively demonstrate that he did not understand the consequences of his plea and was misled or harmed. Appellant has made no affirmative demonstration. Point four is overruled.

■ In point five, appellant contends that the trial court erred by not sua sponte withdrawing his guilty plea when the evidence allegedly raised a substantial question of fact about his guilt. He contends that as there was some evidence of voluntary manslaughter, the trial court should have entered a "not guilty" plea on his behalf. The State argues that nothing in the record shows immediacy, sudden passion, or a sufficient emotional reaction to raise an issue of voluntary manslaughter. We agree with the State's analysis.

While we need not recap the testimony of each witness to address this issue, we briefly summarize the pertinent evidence which appellant asserts raises a voluntary manslaughter issue. The evidence shows that appellant went to Eluterio Villarreal's house, walked in the front door, said nothing, and shot Villarreal three times in the back. San Juanita Sanchez, who was present at the time of the shooting, testified that after appellant shot Villarreal, she asked appellant what he did. According to Sanchez, appellant looked at

**814**

her but said nothing. Sanchez testified that "it shocked both of us."

Further testimony was presented that appellant believed Villarreal was responsible for shooting up appellant's trailer a day earlier. Appellant also believed that Villarreal had severely disciplined appellant's child on another occasion. Sanchez testified that Villarreal did not like appellant. Apparently, Villarreal was involved with appellant's mistress, and during some prior incident between appellant's wife and mistress, the mistress had threatened appellant with some violence at the hands of Villarreal. Less than an hour before appellant shot Villarreal, the mistress apparently telephoned appellant.

A defense psychologist testified that the shooting of the trailer and the reprimanding of the child were the kinds of things going through appellant's mind when he decided to confront Villarreal.

Appellant argues that Sanchez's testimony that "it shocked both of us" together with appellant's silence (when Sanchez asked appellant what he did) support an inference that appellant was impassioned. He further argues that the mistress's telephone call to appellant shortly before the shooting is evidence from which the suddenness of the passion could be inferred.

We do not find that this evidence raises voluntary manslaughter. "Voluntary manslaughter" occurs when a person causes the death of an individual under circumstances that would constitute murder except that the death is caused under the immediate influence of sudden passion rising from an adequate cause. Tex.Penal Code Ann. § 19.-04(a) (Vernon 1989). "Sudden passion" must be "directly caused by and arising out of provocation" by the deceased or another acting with the deceased "at the time of the offense" and is not solely the result of former provocation. Tex.Penal Code Ann. § 19.-04(b) (Vernon 1989). We find no evidence of an adequate cause, even assuming sudden passion. No evidence exists to show that the victim or another acting with the victim provoked appellant at the time of the offense. Moreover, appellant's theory that his mistress said something to invoke appellant's

sudden passion is based on speculation rather than evidence, and there is nothing to suggest that the mistress was acting with the victim. We overrule point five.

 In point six, appellant contends that the trial court erred by including an unnecessary "deadly weapon" issue in the punishment charge, thereby impermissibly commenting on the weight of the evidence. Appellant did not object to the punishment charge on this ground at trial, and therefore no reversible error occurred unless appellant suffered egregious harm. *See Almanza v. State,* 686 S.W.2d 157 (Tex.Crim.App.1985); *Kucha v. State,* 686 S.W.2d 154 (Tex.Crim. App.1985). We find no error. The correct time to submit a special issue concerning the use or exhibition of a deadly weapon is at the punishment phase of trial. *See Luken v. State,* 780 S.W.2d 264, 268–69 (Tex.Crim.App. 1989). Appellant's sixth point is overruled.

The judgment of the trial court is affirmed.