**Kenneth Bruce PERKINS, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 08–93–00305–CR.

Court of Appeals of Texas,
El Paso.

June 8, 1995.

Rehearing Overruled July 12, 1995.

91

Kirk J. Oncken, Houston, for appellant.

John B. Holmes, Dist. Atty. of Harris County, Houston, for State.

Before BARAJAS, C.J., and McCLURE and CHEW, JJ.

## OPINION

McCLURE, Justice.

Kenneth Bruce Perkins appeals his convictions of four counts of aggravated sexual assault of a child. The jury found Appellant

guilty and assessed his punishment at 30 years' imprisonment and a $5,000 fine for each count. We affirm.

Appellant was charged by two multi-count indictments with the aggravated sexual assault of two of his minor grandchildren, and the cases were tried in a single proceeding before a jury. The indictment in the instant case concerns the sexual assault of J.B.P., who was five years old at the time of trial on the merits. Appellant and his wife, Carol Perkins, have two sons, Larin and Lann. Larin is married to Patricia Ann "Trish" Perkins, while Lann is married to Patty J. Perkins. J.B.P. is one of Larin and Trish's three children. A.P. is the only child of Lann and Patty. Appellant attempted to show at trial that Trish and Patty had improperly influenced the complainants to level these accusations because the two women did not like Appellant and his wife. The trial below was emotional, hotly contested, and contentious.

## EXCULPATORY POLYGRAPH EVIDENCE

By his first two points of error, Appellant challenges the trial court's exclusion of exculpatory polygraph evidence showing that Appellant had passed a polygraph examination with regard to these accusations. In Point of Error No. One, Appellant contends that the per se exclusion of polygraph test evidence violates his rights to due process, compulsory process, and to testify in his own behalf as guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. In Point of Error No. Two, he asserts that the trial court abused its discretion in applying the per se rule to exclude the polygraph evidence at his trial because it would have bolstered his credibility and called into question the credibility of the State's witnesses. Appellant contends that this evidence is admissible pursuant to Rule 702 of the Rules of Criminal Evidence.

### Underlying Facts

Outside the presence of the jury, Appellant offered the testimony of Ernie Hulsey, a certified polygraph examiner employed by the Harris County Sheriff's Department. Appellant developed through Hulsey the scientific basis and reliability of polygraph testing and its acceptance in the scientific community. Hulsey also testified with regard to his specialized training, knowledge, and experience as a certified polygraph examiner. Hulsey then testified specifically with regard to his polygraph examination of Appellant which concerned the accusations in this case.[1] He told the trial court that he did not detect any deceptive responses by Appellant during the test and he also offered a direct opinion that Appellant was *telling the truth*. The trial court excluded the evidence on the ground that it is not admissible "under our present rulings." Appellant later testified before the jury and denied committing the conduct alleged in the indictments.

### Standard of Review

The decision whether to allow the testimony of an expert witness is within the sound discretion of the trial court. *Duckett v. State*, 797 S.W.2d 906, 910 (Tex.Crim.App. 1990); *McIntosh v. State*, 855 S.W.2d 753, 767 (Tex.App.—Dallas 1993, pet. ref'd). The trial court's decision shall not be overturned except upon a showing of an abuse of that discretion. *Amos v. State*, 819 S.W.2d 156, 163 (Tex.Crim.App.1991), *cert. denied*, 504 U.S. 917, 112 S.Ct. 1959, 118 L.Ed.2d 561 (1992); *McIntosh*, 855 S.W.2d at 767. The appellate court reviews the record with an eye toward the rules regarding relevancy and probative value of the proffered evidence, as well as any specific rule under which a particular piece of evidence or parcel of testimony is offered. *Duckett*, 797 S.W.2d at 913.

### Per Se Exclusion of Polygraph Evidence Prior to Adoption of Rules of Criminal Evidence

It has long been the rule in Texas that polygraph evidence is inadmissible on behalf of the State or the defense due to the inher-

---

1. Although Hulsey had before him while testifying a copy of the questions he asked and Appellant's answers, the record does not contain a copy of that document. The prosecutor repeated several of the questions and Appellant's answers during cross-examination. From that exchange, we gather that Appellant denied any sexual contact or conduct with the victims.

ent unreliability of the evidence and its tendency to be unduly persuasive. *See e.g., Tennard v. State,* 802 S.W.2d 678, 683 (Tex. Crim.App.1990); *Shiflet v. State,* 732 S.W.2d 622, 630 (Tex.Crim.App.1985); *Nethery v. State,* 692 S.W.2d 686, 700 (Tex.Crim.App. 1985), *cert. denied,* 474 U.S. 1110, 106 S.Ct. 897, 88 L.Ed.2d 931 (1986); *Robinson v. State,* 550 S.W.2d 54, 59–61 (Tex.Crim.App. 1977); *Lee v. State,* 455 S.W.2d 316, 321 (Tex.Crim.App.1970). This per se rule of inadmissibility is based, in part, upon the "general acceptance" doctrine announced in *Frye v. United States,* 293 F. 1013, 1014 (D.C.Cir.1923). *See Romero v. State,* 493 S.W.2d 206, 209–11 (Tex.Crim.App.1973). Polygraph evidence has also generally been excluded due to potential sources of error in the test itself, including the competency of the examiner, the tendency of the jury to place too much reliance on the test results, the lack of standardization of test procedures, and the difficulty for jury evaluation of examiners' opinions. *Romero,* 493 S.W.2d at 210–11.

### Admissibility of Polygraph Evidence After Adoption of Rules of Criminal Evidence

■ We agree with Appellant that the admissibility of evidence must be analyzed according to the Rules of Criminal Evidence. *See Long v. State,* 823 S.W.2d 259, 270 (Tex. Crim.App.1991). He is also correct that the *Frye* test no longer governs the admissibility of novel scientific evidence; rather, Rule 702 of the Texas Rules of Criminal Evidence is the applicable standard.[2] *See Flores v. State,* 871 S.W.2d 714, 722 (Tex.Crim.App.1993); *Kelly v. State,* 824 S.W.2d 568 (Tex.Crim. App.1992). Accordingly, we will analyze the admissibility of the excluded polygraph evidence under the requirements of Rule 702.

■ The threshold determination for admitting expert testimony is whether the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue. TEX.R.CRIM.EVID. 702; *Kelly,* 824

S.W.2d at 573; *Duckett,* 797 S.W.2d at 910. The use of expert testimony must be limited to situations in which the expert's knowledge and experience on a relevant issue are beyond that of an average juror. *Yount v. State,* 872 S.W.2d 706, 710 (Tex.Crim.App. 1993); *Duckett,* 797 S.W.2d at 914. In such a case, the decision to be made remains with the jury, but the testimonial expertise is allowed to enable the trier of fact to better comprehend the full significance of the evidence. *Duckett,* 797 S.W.2d at 914. While expert testimony is admissible to *aid* the jury in its decision, it may not *supplant* that decision. *Yount,* 872 S.W.2d at 710; *Duckett,* 797 S.W.2d at 914–15.

■ Applying the above principles, the Court of Criminal Appeals has held that expert testimony that a particular witness is truthful is inadmissible under Rule 702 because it does not concern a subject upon which the testimony of an expert would *assist* the trier of fact. *Yount,* 872 S.W.2d at 709–11; *see also Cohn v. State,* 849 S.W.2d 817, 818 (Tex.Crim.App.1993); *Duckett,* 797 S.W.2d at 914–15. Evidence that a particular witness is truthful does more than assist the trier of fact to understand the evidence or to determine a fact in issue; it impermissibly decides an issue for the jury. *Yount,* 872 S.W.2d at 709; *see Pierce v. State,* 777 S.W.2d 399, 415–16 (Tex.Crim.App.1989) (trial court properly excluded expert testimony that eyewitness identification is unreliable because such evidence is not helpful to the jury since the jury is qualified to make a determination on the credibility of eyewitnesses). While *Yount* and *Pierce* concerned different types of expert evidence than what is at issue here, the basis for its exclusion is just as compelling in the instant case, if not more so given the tendency of jurors to treat polygraph evidence as conclusive on the issue of a person's credibility. Accordingly, we hold that polygraph evidence offered to show that the defendant is truthful is inadmissible under Rule 702. The trial court did not

---

**2.** Rule 702 provides: If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise. TEX.R.CRIM.EVID. 702.

abuse its discretion in excluding the evidence.

### Is Per Se Exclusion of Exculpatory Polygraph Evidence Constitutionally Permissible?

We turn our attention now to Appellant's contention that a per se exclusion of polygraph evidence due to unreliability is constitutionally impermissible because it violates his right to present evidence material to his defense. It is undisputed that a person charged with a crime has the right to defend himself. *Fuller v. State*, 829 S.W.2d 191, 207 (Tex.Crim.App.1992). That right originates in the Sixth Amendment's guarantee of compulsory process to obtain favorable witnesses and in the due process clause. *Fuller*, 829 S.W.2d at 207, *citing Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). When state rules of evidence conflict with the above rights to the degree that it would be fundamentally unfair to the defendant to apply them, the federal constitution requires that the rules be invalidated. *Fuller*, 829 S.W.2d at 207, *citing Rock v. Arkansas*, 483 U.S. 44, 53–56, 107 S.Ct. 2704, 2710–2711, 97 L.Ed.2d 37 (1987) (per se exclusion of a criminal defendant's hypnotically refreshed testimony on ground of unreliability violated defendant's rights to due process and to testify on her own behalf), and *Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297 (1973) (state's hearsay rule invalidated as violative of due process because it prevented the defendant from introducing favorable evidence even though the evidence bore assurances of trustworthiness and the state failed to demonstrate that the evidence was unreliable).

The right to present relevant testimony is not without limitation. *Rock v. Arkansas*, 483 U.S. at 55, 107 S.Ct. at 2711, 97 L.Ed.2d at 49. The right may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process. *Id.* Rules for the admission and exclusion of evidence should be found offensive to notions of fundamental fairness embodied in the United States Constitution only when, (1) without a rational basis, they disadvantage the defendant more severely than they do the State, or (2) arbitrarily exclude reliable defensive evidence without achieving a superior social benefit. *Fuller*, 829 S.W.2d at 208; *see Rock v. Arkansas*, 483 U.S. at 53–56, 107 S.Ct. at 2710–2711.

Upon examining the per se exclusion of polygraph evidence in this light, we first observe that there is no evidence that the exclusion of polygraph evidence disadvantages the defendant more severely than the State. In fact, the State would be greatly benefitted if it could bolster the credibility of its witnesses at trial through the use of expert testimony. Second, there is no showing that the rule arbitrarily excludes *reliable* defensive evidence without achieving a superior social benefit. Even though serious doubts remain about the reliability of polygraph evidence,[3] its unreliability is not the primary reason for its exclusion under our holding. Instead, we find that such evidence should be excluded because it impermissibly decides the issues of credibility and guilt for the trier of fact and supplants the jury's function.[4]

3. Notwithstanding Appellant's claims that polygraph examinations and results are more reliable today due to the fact that polygraph examiners are more competent than in times past, the theory and methodology behind polygraph examinations has remained unchanged since *Romero*. In administering this polygraph examination, Hulsey measured changes in Appellant's blood pressure, heart rate, respiratory function, and galvanic skin response. These are the same physiological responses measured in *Romero*. *See Romero*, 493 S.W.2d at 209. Thus, the same potential for error exists today despite improvements made in the competency of examiners. *See Romero*, 493 S.W.2d at 210 (court discussed *Henderson v. State*, 94 Okla.Crim. 45, 230 P.2d 495, 501–02 (1951), which noted five factors responsible for error in polygraph examinations: (1) emotional tension, (2) physiological abnormalities, (3) mental abnormalities, (4) unresponsiveness in a lying or guilty subject, and (5) unobserved muscular movement which produce ambiguities or misleading indications in the blood pressure tracing).

4. This concern was also expressed in pre-rules cases. *See e.g., Romero*, 493 S.W.2d at 211 (one reason for exclusion of polygraph evidence is because of the danger that the trier of fact will treat polygraph evidence as conclusive on the issue of the witnesses' credibility or on the guilt of the accused).

Certainly, society has a legitimate interest in insuring that the credibility of witnesses, and ultimately, the guilt of an accused person, is decided only after the trier of fact has given due consideration to all the evidence in a case. Until such time that polygraph evidence is so reliable that we are willing to allow it to take the place of the trier of fact, then this exclusion of polygraph evidence under Rule 702 should remain intact.

For all of these reasons, we find that the per se exclusion of polygraph evidence is constitutionally permissible and that the trial court did not abuse its discretion in excluding the evidence in this case. Points of Error Nos. One and Two are overruled.

## CONSTITUTIONALITY OF TEX. GOV'T CODE ANN. § 74.053(b)

In Point of Error No. Three, Appellant contends that Article 74.053(b) of the Texas Government Code, as applied in this case, denies him equal protection of the law because it permits civil litigants to recuse assigned former judges automatically, but does not afford criminal defendants that same power. TEX.GOV'T CODE ANN. art. 74.053(b) (Vernon Supp.1995); *see Lanford v. Fourteenth Court of Appeals,* 847 S.W.2d 581 (Tex.Crim.App.1993) (Section 74.053(b) does not apply to criminal cases.). The Equal Protection clause allows the legislature considerable leeway to enact legislation that may appear to affect similarly situated people differently. *Clark v. State,* 665 S.W.2d 476, 480 (Tex.Crim.App.1984); *Garcia v. State,* 877 S.W.2d 809, 811 (Tex.App.—Corpus Christi 1994, pet. ref'd). Absent interference with the exercise of a fundamental right or a burden on a suspect class, classifications will not be set aside on equal protection grounds if they are rationally related to a legitimate state interest. *Clark,* 665 S.W.2d at 480; *Garcia,* 877 S.W.2d at 811. Stated another way, the test is whether the challenged classification rests on grounds wholly irrelevant to achievement of a valid state objective. *Clark,* 665 S.W.2d at 481; *Garcia,* 877 S.W.2d at 811.

The same constitutional challenge made by Appellant in the instant case has previously been rejected by the Thirteenth Court of Appeals in the above-cited case of *Garcia v. State.* In that case, the Court found the policy discussion in *Lanford* instructive in finding a rational basis for the legislature's decision to grant only civil litigants the right to peremptorily challenge former judges. *Garcia,* 877 S.W.2d at 811. Giving such power to the State, a party in all criminal prosecutions, would give the State an inordinate power of influence over former judges. *Garcia,* 877 S.W.2d at 811; *see Lanford,* 847 S.W.2d at 587. Of equal concern in *Lanford* and *Garcia,* giving the power to criminal litigants would give prosecutors and defense attorneys the right to receive an automatic continuance any time a former judge presided in a case, a situation that could result in defendants spending more time in already overcrowded jails. *Garcia,* 877 S.W.2d at 811; *see Lanford,* 847 S.W.2d at 587.

Appellant argues that the policy found in *Lanford,* that is, the State would gain inordinate power if given the right to peremptorily challenge visiting former judges in criminal cases, does not apply to him because an individual defendant is obviously not a party to every criminal case. Thus, he seems to suggest that the right should be given criminal defendants, but denied the State. Similar arguments were raised by the appellant in *Garcia* and rejected for two reasons which we find persuasive. First, the Court of Appeals found that the State has legitimate interests in disposing of its criminal prosecutions in a timely manner, in controlling inmate populations, and in alleviating overcrowded jails. *Garcia,* 877 S.W.2d at 811. To the extent the absence of automatic continuances promotes these interests, Section 74.053(b) is rational. *Id.* at 811. Second, the legislature did not act irrationally when it chose to eliminate the State's potential power of influence over assigned judges by making the act inapplicable to criminal cases in general. *Id.* Giving a criminal defendant the power to disqualify the judge while not giving such power to the State would have created a difference in position for the parties to a criminal action. *Id.* It is rational to keep the parties to a criminal action on an equal footing by denying the power of peremptory challenge to both sides. *Id.* at 811–

12. Because Section 74.053(b) is rationally related to legitimate state interests, there is no equal protection violation. Point of Error No. Three is overruled.

## PROSECUTORIAL MISCONDUCT

In his fourth point of error, Appellant, complaining of various acts on the part of the prosecutor, alleges that the trial court erred in failing to grant his motion for mistrial due to prosecutorial misconduct. In order to preserve error in cases of prosecutorial misconduct, the defendant must (1) make a timely and specific objection; (2) request an instruction that the jury disregard the matter improperly placed before the jury; and (3) move for a mistrial. TEX.R.APP.P. 52(a); *Cook v. State*, 858 S.W.2d 467, 473 (Tex.Crim.App.1993); *see Huffman v. State*, 746 S.W.2d 212, 218 (Tex.Crim.App.1988) (defendant must object that the prosecutor's question was clearly calculated to inflame the minds of the jury and was of such a character so as to suggest the impossibility of withdrawing the impression produced). We have reviewed those portions of the record wherein the complained of conduct occurred, and find that, while Appellant occasionally objected on various other grounds, he did not object on the basis of prosecutorial misconduct except in three instances. Appellant's failure to object to the remainder waived the asserted error.

Claims of prosecutorial misconduct are determined on a case by case basis. *Stahl v. State*, 749 S.W.2d 826, 830 (Tex.Crim.App.1988). Prosecutorial misconduct has been found where (1) the prosecutor's actions deliberately violated an express court order; and (2) the prosecutor's misconduct

was so blatant as to border on being contumacious. *Stahl*, 749 S.W.2d at 831, *citing Landry v. State*, 706 S.W.2d 105, 111 (Tex. Crim.App.1985), *cert. denied*, 479 U.S. 871, 107 S.Ct. 242, 93 L.Ed.2d 167 (1986). Prosecutorial misconduct may also be shown where the prosecutor asks a question which is clearly calculated to inflame the minds of the jury and is of such a character so as to suggest the impossibility of withdrawing the impression produced. *See Huffman*, 746 S.W.2d at 218.

Turning our attention to the merits of the three complaints in which error is preserved, Appellant first complains that the prosecutor asked Carol Perkins whether she possessed any battery-operated sexual devices (dildos) in violation of an instruction by the court. Appellant does not point to any place in the record in which it is affirmatively shown that the court had instructed the prosecutor to not raise this matter before the jury. Our review of the rather lengthy appellate record[5] does not reveal that such an instruction had been given. While the trial court had not permitted the State to elicit from Patty Perkins that she had seen such devices in Appellant's home, the court did not instruct the prosecutor that she could not raise this subject through other witnesses.[6] In fact, the court took the State's subsequent re-offering of this evidence under advisement on two occasions, but never made a ruling thereon. Consequently, the record does not support Appellant's claim that the prosecutor deliberately violated a court order or instruction. Further, there is no evidence that the question was clearly calculated to inflame the minds of the jury or that it was of such a character so as to suggest the impossibility

---

5. The appellate record consists of eighteen volumes of statement of facts containing 3,439 pages, and two transcript volumes consisting of 368 pages.

6. Evidence introduced without objection earlier in the trial showed that both complainants had said that Appellant used dildos in some of the assaults. A.P. told her mother that she had seen Appellant's penis and she had also seen a "chopped off" penis that moved. A.P. said that Appellant had touched her vagina with the "chopped off" penis. Similarly, the jury heard

testimony that J.B.P. had reported that Appellant had put "toys" or a "statue" that moved inside her bottom. The State unsuccessfully attempted to establish through Patty Perkins that she had seen dildos, including one similar to the one described by A.P. as a "chopped off penis," in Appellant's home. The second offering of this evidence occurred after Appellant questioned Patty about the "chopped off penis" and suggested that A.P. had falsely accused Appellant of chopping off a dog's penis and squirting blood out of it. The State requested again that it be allowed to ask Patty whether she had seen any dildos in Appellant's home in order to correct the

of withdrawing the impression produced. Given that the jury had already heard that Appellant had used dildos to assault both children and that Appellant had attempted to discredit A.P. by showing that she had made up a story about a "chopped off penis," the prosecutor's efforts to show that Appellant and his wife possessed dildos in their home similar to those mentioned by the children was a legitimate area of inquiry. Appellant's first contention is without merit.

■ Next, Appellant asserts that the prosecutor violated his right to a fair trial by impermissibly questioning Appellant during cross-examination whether he had ever bullied anybody. When Appellant denied it, the prosecutor asked him whether he knew a person named "Michael Craig." Outside the presence of the jury, it was revealed that Appellant had assaulted a police officer named Michael Craig. The State sought to introduce this evidence to rebut the testimony of defense character witnesses that Appellant was not a "bully." The trial court sustained Appellant's objection based upon Rule 404(b) and instructed the jury to disregard the evidence. However, the court denied Appellant's motion for mistrial. Subsequently, the court did not permit Michael Craig to testify with regard to his opinion of Appellant's veracity and peaceful nature.

Appellant has failed to show that the prosecutor's question, "Who is Michael Craig?" was clearly calculated to inflame the minds of the jury and was of such a character so as to suggest the impermissibility of withdrawing the impression produced. It is not at all clear from the jury's perspective that the question referred to a specific instance of bad conduct on Appellant's part. Further, even if we assume that the question had any prejudicial effect, the trial court's instruction to the jury to disregard was sufficient to remove its impact.

■ Finally, Appellant contends that the prosecutor committed prosecutorial misconduct during cross-examination of a defense witness. The witness testified on direct examination that Trish had told her that she

did not like Appellant and his wife because she thought they were "white trash." In an effort to expose whether the witness knew the specific basis for Trish's dislike of Appellant, the prosecutor asked the following question:

Q: Did she [Trish Perkins] tell you about the sexual innuendos and sexual comments—

Before the prosecutor could complete the question, however, Appellant requested a hearing at the bench. The court sustained Appellant's objection and instructed the jury to disregard the question, but denied Appellant's motion for mistrial.

We do not find that the prosecutor deliberately violated a court order or that her conduct bordered on being contumacious. In fact, the prosecutor's question had reference to matters which were already in evidence in that Trish had testified earlier in the trial that she felt uncomfortable around Appellant because of sexual comments he made to her. Considering that the prosecutor only partially asked the question before Appellant objected, there is no evidence that the resulting prejudice, if any, could not be cured by the court's instruction to disregard. Consequently, this contention is without merit. For all of these reasons, Point of Error No. Four is overruled.

## EXCLUSION OF CHILD–WITNESS TESTIMONY DURING PRETRIAL HEARING

■ In Point of Error No. Five, Appellant contends that the trial court erred in excluding material and favorable evidence by not permitting him to call several child witnesses [7] to testify at a pretrial hearing. In a related contention, Appellant argues in his sixth point of error that the trial court, by excluding this testimony, violated Appellant's rights guaranteed by the Fifth, Sixth, and Fourteenth Amendments. We need not reach the merits of Appellant's contentions because he has failed to preserve error. Rule 103(a)(2) of the Rules of Criminal Evi-

false impression that Appellant had left with the jury.

7. These children were either related to the complainants or were their playmates. At the time of

the hearing, all but two of these children ranged from four years to six years of age; the other two children were eleven years old and fourteen years old.

dence provides that error may not be predicated upon a ruling of the court excluding evidence unless the substance of the evidence was made known to the court by offer. Tex. R.Crim.Evid. 103(a)(2); *see Chambers v. State,* 866 S.W.2d 9, 27 (Tex.Crim.App.1993). Appellant did not do so. In fact, Appellant told the trial court that he could not make an offer of proof because he did not know what the children's testimony would be. Consequently, error in the exclusion of the children's testimony is waived. Points of Error Nos. Five and Six are overruled.

### STATEMENTS BY APPELLANT

■ Appellant asserts in Points of Error Nos. Seven and Eight that the trial court erred in admitting certain statements he had made to Larin Perkins. We will address these contentions separately. In Point of Error No. Seven, Appellant complains of the admission of his statements, including one made about his brother who had been convicted of child molestation, on the ground that his statements were hearsay. J.B.P.'s therapist told Larin that J.B.P. might have been sexually molested by an adolescent family member and by an unknown adult male. Larin testified that when he repeated what he had learned to Appellant and other family members, Appellant made the following comments which disturbed Larin:

A: My father and—you know, they were all there; so, you can ask everybody. He said—

[Appellant's hearsay objection overruled].

A: At that point he said, "I can't believe this is all happening." He said, "I'm not sick like my brother."

[Appellant objected again on the grounds of hearsay and Rules 403 and 404(b). Although his objections were overruled, the trial court did not allow the prosecutor to elicit from Larin that the brother had been convicted of molesting a child and sentenced to prison.]

Q: In the same conversation—or in the same breath that your dad said—made the statement—

[Appellant reurged his prior objections, but the trial court overruled them.]

Q: Did he say something else to you right after he made the statement you already testified to?

A: Yes, ma'am.

Q: What was that?

A: He said, "I hope you don't blame us."

■ We find that the above testimony is not hearsay for two reasons. First, the State did not offer Appellant's out-of-court statements for the truth of the matter asserted. Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Tex.R.Crim. Evid. 801(d). If the out-of-court statement is relevant only if the trier of fact believes that the statement was both truthful and accurate, then the statement is hearsay. *Bell v. State,* 877 S.W.2d 21, 24 (Tex.App.—Dallas 1994, pet. ref'd). On the other hand, if the relevancy of the out-of-court statement does not hinge on the truthfulness of the statement, it is not hearsay. *Bell,* 877 S.W.2d at 24. The above testimony was not offered to show that Appellant's brother was sick or that Appellant was not sick like his brother. Likewise, the other statement was not offered to show that Appellant hoped that Larin did not blame him for J.B.P.'s assault. Instead, it was relevant to show Appellant's state of mind when told about the molestation, namely, he believed that he would be suspected even though he had not been accused. Because the relevancy of the statements did not hinge on their truthfulness, the statements were not hearsay.

■ Second, Appellant's statements to Larin are exempted from the hearsay rule under Rule 801(e)(2)(A), which provides that a statement is not hearsay if the statement is offered against a party and is his own statement. Tex.R.Crim.Evid. 801(e)(2)(A); *Bell,* 877 S.W.2d at 24. Rule 801(e)(2)(A) exempts admissions by a party opponent from the hearsay definition because a party should not be allowed to exclude his own statement on the ground that what he said was untrustworthy. *See Bell,* 877 S.W.2d at 24. We find no merit in Appellant's argument that the statements were not admissions because they did not admit an element of an offense. Appellant has cited no authority for this conten-

tion, and nothing in the language of Rule 801(e)(2)(A) can be read to require that a statement, in order to qualify as an admission, must admit an element of an offense. Consequently, the trial court did not err in admitting the evidence of Appellant's statements to Larin. Point of Error No. Seven is overruled.

■■■■ In Point of Error No. Eight, Appellant contends that the trial court abused its discretion under Rule 403 in determining that the danger of unfair prejudice did not substantially outweigh the probative value of Appellant's statements about his brother.[8] The approach under Rule 403 is to admit relevant evidence *unless* its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence. TEX.R.CRIM.EVID. 403; *Long*, 823 S.W.2d at 271. Since almost any relevant evidence offered by one side is going to be prejudicial to the opposing party, only unfair prejudice provides a basis for excluding relevant evidence under Rule 403. *Fletcher v. State*, 852 S.W.2d 271, 277 (Tex. App.—Dallas 1993, pet. ref'd). Unfair prejudice means an undue tendency to suggest decision on an improper basis, commonly an emotional one. *Montgomery*, 810 S.W.2d at 378. Because Rule 403 favors the admission of relevant evidence, the presumption is that relevant evidence will be more probative than prejudicial. *Long*, 823 S.W.2d at 271.

■■■■ In conducting the balancing test required by Rule 403, the trial court must assess the inherent tendency (if any) of the evidence to encourage resolution of material issues on an improper basis, and then must balance against that inherent tendency the host of factors affecting probativeness, including the relative weight of the evidence and the degree to which its proponent might be disadvantaged without it. *Richardson v. State*, 879 S.W.2d 874, 880–81 (Tex.Crim.App. 1993); *Fuller*, 829 S.W.2d at 206. An appellate court reviewing the trial court's decision may reverse it only for an abuse of discretion, i.e., only when the trial court's decision was outside the zone of reasonable disagreement. *Richardson*, 879 S.W.2d at 881; *Montgomery*, 810 S.W.2d at 391.

■■■ Appellant argues that this evidence had an undue tendency to encourage resolution of the issue of Appellant's guilt on an improper basis, that is, on the basis that there was a familial propensity to molest children.[9] While it is arguable that there is a general tendency to evaluate others in light of their family members' general character, we find it unlikely that the jury, simply because it could have inferred that Appellant's brother had committed a similar offense, would have decided Appellant's guilt on that basis. The evidence was offered to show a consciousness of guilt, not a familial propensity to commit this type of offense. The State argues on appeal, as it did at trial, that the evidence possesses significant probative value because it shows a consciousness of guilt on Appellant's part in that he immediately became defensive when told of the molestation of his granddaughter. A consciousness of guilt is perhaps one of the strongest kinds of evidence of guilt. *Torres v. State*, 794 S.W.2d 596, 598 (Tex.App.—Austin 1990, no pet.). Any conduct on the part of the accused of a crime subsequent to its commis-

---

8. Although Appellant also objected at trial on the basis of Rule 404(b), he does not advance that claim on appeal. In fact, he concedes that Rule 404(b) is inapplicable because the evidence does not involve any extraneous conduct on his part. Appellant did not object at trial that the evidence was irrelevant under Rule 401. Consequently, we will assume the evidence is relevant. *See Long*, 823 S.W.2d at 271 n. 17.

9. In arguing that it is improper to admit this evidence under Rule 403, Appellant also relies upon *Gant v. State*, 513 S.W.2d 52 (Tex.Crim. App.1974). *Gant* held that evidence showing the character of the defendant's associates is not relevant to the issue of guilt. Because *Gant* is a prerules case it does not directly support an argument that the evidence is inadmissible under Rule 403. Further, our reading of *Gant* reflects that the reason for the exclusion of this type of evidence is due to its lack of relevancy, rather than unfair prejudice. *Gant*, 513 S.W.2d at 53; *see Koller v. State*, 518 S.W.2d 373, 377 (Tex. Crim.App.1975) (citing *Gant*, the Court held that evidence of the character of the defendant's associates is inadmissible because it is not evidence of guilt).

sion, which indicates a "consciousness of guilt" may be received as a circumstance tending to prove that he committed the act with which he is charged. *Id.* On the other hand, Appellant claims that his statements do not reflect guilty knowledge as suggested by the State, but instead only reflect Appellant's concern that people would find him guilty by association. Despite Appellant's ability to explain his statements, the trial court could have concluded that his explanation did not undermine their probative value. Ultimately, it was for to the jury to decide what Appellant meant by his statements and their significance to the issue of his guilt.

Appellant also argues that the State did not need the evidence to prove guilty knowledge, because the complainants' accounts, if believed, were sufficient in and of themselves for that purpose. This contention is without merit. Appellant defended these charges on the basis that the complainants made their charges due to improper suggestions made by others. Under these circumstances, showing that Appellant possessed a consciousness of guilt even before the complainants had identified him as their assailant was relevant and important to the prosecution. Thus, the State would have been significantly disadvantaged if not permitted to introduce this evidence. We find that the trial court did not abuse its discretion in concluding that the probative value of this evidence was not substantially outweighed by the danger of unfair prejudice. Point of Error No. Eight is overruled.

### CHARACTER EVIDENCE

■ In his ninth point of error, Appellant asserts that the trial court erred in admitting testimony by Trish Perkins that Appellant lacked the morals and values of a "straightlaced church-going individual" because it constituted improper character evidence. In explaining her relationship with Appellant and

Carol Perkins, Trish testified that she felt uncomfortable around Appellant at times due to things he said to her. Trish stated that when she first met her husband's family, her in-laws described her as a straightlaced church girl. She then went on to testify that she did not feel comfortable around Appellant because she felt he had different values and morals than she did. Appellant objected that the evidence constituted improper character evidence. The court ruled that the witness could testify generally that she believed Appellant had different moral values, but she could not relate any specific instances that formed the basis of her opinion.

It is well established that evidence of a person's character or a trait of his character is generally not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion. TEX.R.CRIM.EVID. 404(a). Under these facts, however, we do not agree that the jury would have necessarily drawn an adverse or negative inference about Appellant's character from this portion of Trish's testimony. She did not testify that Appellant lacked the values of a "straightlaced church-going individual," but rather, that Appellant had *different* values and morals than she did. The fact that a person has *different* values than a church-going individual does not necessarily mandate a conclusion that the person lacks values or is immoral. As such, the evidence in question did not show that Appellant possessed a bad character trait. Point of Error No. Nine is overruled.

### DISCOVERY ORDER

In Point of Error No. Ten, Appellant contends that the visiting judge violated his right to due process by failing to enforce a discovery order entered by the judge who originally presided over the case.[10] More specifically, Appellant complains that he was not provided prior to trial with copies of

---

10. The original presiding judge orally granted the following paragraphs of Appellant's discovery motion:

9. All medical, laboratory and scientific reports prepared in regard to the Defendant's case and/or which form the basis of the charge against the Defendant and/or which the State intends to introduce at any hearing or trial;

. . . . .

11. All medical records pertaining to the treatment of any witness for injuries or trauma allegedly resulting from the acts or omissions of the Defendant, including any video and/or audio recordings made of any witness or complainant in this case as part of said witness' or complainant's treatment.

"notes" made by three therapists who treated the complainants and another child witness until after the witnesses' direct examinations were concluded at trial. His complaint in this regard is two-fold: (1) the State deliberately failed to comply with the discovery order deadline; and (2) the visiting judge did not enforce the discovery order when requested to do so. Both contentions are without merit.

Criminal defendants are entitled to limited discovery under Article 39.14 of the Code of Criminal Procedure, independent of the constitutional right of access to exculpatory evidence. *Kinnamon v. State,* 791 S.W.2d 84, 91 (Tex.Crim.App.1990). Nevertheless, a defendant does not have a general right to discovery of evidence in possession of the State. *Kinnamon,* 791 S.W.2d at 91; *Whitchurch v. State,* 650 S.W.2d 422, 425 (Tex.Crim.App.1983). Decisions involving pretrial discovery of evidence which is not exculpatory, mitigating, or privileged are within the discretion of the trial court. *Kinnamon,* 791 S.W.2d at 91; *Whitchurch,* 650 S.W.2d at 425.

With regard to Appellant's first complaint, we find that the trial court did not provide for any deadline by which the State had to comply with the discovery order. A deadline is found in Appellant's proposed discovery order, but he did not obtain the trial court's signature thereon. Appellant did not request in either his motion or at the pretrial hearing that the court set this deadline, or otherwise set the time, place, and manner for completing the discovery process. *See* TEX. CODE CRIM.PROC.ANN. art. 39.14 (Vernon 1979); *see also Kinnamon,* 791 S.W.2d at 92 (trial court did not err in failing to set time, place, and manner for discovery where defendant failed to request that the court do so). Consequently, we do not find that the State failed to comply with a discovery deadline.

Appellant also complains that the visiting judge erred by failing to require the State to turn over copies of the therapists' notes just prior to trial. The court ruled instead that the State would be required to turn over the therapists' files on the day they testified. In ruling that the State did not have to physically turn over copies of the notes until after the witnesses concluded their direct examination, the trial judge impliedly concluded that the notes did not contain exculpatory or mitigating material, and further, that they were statements of the witnesses which did not have to be produced until after the witnesses concluded their direct examination. *See* TEX. R.CRIM.EVID. 614(a); TEX.CODE CRIM.PROC. ANN. art. 39.14 (Vernon 1979). We are unable to determine whether the trial court abused its discretion in reaching these conclusions because Appellant failed to have the therapists' notes admitted into evidence below and included in the appellate record for our review. Point of Error No. Ten is overruled.

## FAILURE TO PRESENT EXCULPATORY EVIDENCE TO GRAND JURY [11]

In Point of Error No. Eleven, Appellant complains that his conviction is invalid because it is based upon a constitutionally infirm indictment due to the fact that the prosecutor failed to present exculpatory evidence to the Grand Jury. Appellant did not raise this complaint in the context of prosecutorial misconduct. Rather, he filed a motion to quash the indictment on this ground prior to trial which the trial court denied without a hearing. We find it unnecessary to review the merits of Appellant's attack on the indictment. If an indictment is valid on its face, as in the instant case, an appellate court may not go behind the indictment to determine whether the indictment was properly returned or to review alleged procedural errors in its presentment. *De-Blanc v. State,* 799 S.W.2d 701, 706 (Tex. Crim.App.1990); *Dean v. State,* 749 S.W.2d

11. Although the original brief purportedly contains twelve points of error, there are only eleven points of error which apply to the instant case. Consequently, this point of error is renumbered as Point of Error Eleven. Two additional points of error were raised in a supplemental brief and are numbered Points of Error Thirteen and Fourteen. These supplemental points have been renumbered as Points of Error Twelve and Thirteen.

80, 82 (Tex.Crim.App.1988); *Crocker v. State,* 573 S.W.2d 190, 204 (Tex.Crim.App.1978). When a legally constituted grand jury returns an indictment which is valid on its face, it is sufficient to call for a trial on the merits. *Dean,* 749 S.W.2d at 82. Point of Error No. Eleven is overruled.

## PERJURED TESTIMONY

 In Points of Error Nos. Twelve and Thirteen, Appellant contends for the first time on appeal that his conviction should be reversed because it was procured through the use of perjured testimony by one of the State's expert witnesses. Specifically, Appellant claims that Dr. Robert McLaughlin committed aggravated perjury by testifying falsely with regard to the findings of a scientific study, committed a fraud upon the court, and breached his ethical duties as a psychologist. Even though Dr. McLaughlin did not identify the study to which he referred in his testimony, Appellant maintains that he could have been referring to only one of two studies. He has attached copies of those studies to his supplemental brief.

It is clear that the State is not allowed to obtain a conviction through the knowing use of perjured testimony. *Losada v. State,* 721 S.W.2d 305, 311 (Tex.Crim.App. 1986); *Luck v. State,* 588 S.W.2d 371, 373 (Tex.Crim.App.1979). If the prosecution presents a false picture of the facts by failing to correct its own testimony when it becomes apparent that the testimony was false, then the conviction must be reversed. *Losada,* 721 S.W.2d at 311; *Luck,* 588 S.W.2d at 373. However, the appellant bears the burden of showing that the testimony used by the State was in fact perjured. *Losada,* 721 S.W.2d at 311; *Luck,* 588 S.W.2d at 373.

We find that the record does not support Appellant's contention. The studies he has attached to his supplemental brief were not introduced at trial. Accordingly, the State correctly contends that this Court may not consider the studies because they are not part of the appellate record. *See Young v. State,* 552 S.W.2d 441, 443 (Tex.Crim.App. 1977) (articles attached to the briefs are not properly before the appellate court as evidence); *Martin v. State,* 492 S.W.2d 471, 472 (Tex.Crim.App.1973) (docket sheet attached to brief did not appear in the record, and therefore, could not be considered by appellate court); *Jones v. State,* 478 S.W.2d 937, 938 n. 1 (Tex.Crim.App.1972) (exhibit attached to appellant's brief which did not appear in record could not be considered by appellate court). Nothing in the record supports Appellant's contention that Dr. McLaughlin testified falsely or that the State knowingly used perjured testimony to obtain Appellant's conviction. Accordingly, Points of Error Nos. Twelve and Thirteen are overruled.

## CONCLUSION

Having overruled all of Appellant's points of error, the judgment of the trial court is affirmed.