COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | |
|---|---|---|
| BILLY CHEEKS, | | No. 08-10-00353-CR |
| Appellant, | § | |
| | § | Appeal from |
| v. | § | |
| | § | 168th District Court |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC # 20100D02976) |
| | § | |

**O P I N I O N**

Billy Cheeks appeals his conviction of family violence assault enhanced by a prior conviction of family violence assault. The indictment charged Appellant with aggravated assault in Count I and family violence assault (enhanced) in Count II. A jury acquitted Appellant of aggravated assault but found him guilty of Count II. At the conclusion of the punishment phase of trial, the trial court found Appellant had previously been convicted of attempted murder as alleged in the enhancement paragraph and assessed his punishment at imprisonment for a term of twelve years. We affirm.

**FACTUAL SUMMARY**

Petra Chriktane Triplett was living with Appellant on June 1, 2009. That morning, Appellant went to the store to buy beer, wine, and cigarettes. Appellant returned home and discovered that the clerk had not put the cigarettes in the bag. Appellant became furious and blamed Triplett even though she had not gone to the store with him. Appellant told her to shut up and go stay in the bedroom until he told her she could come out. Triplett left the apartment and went to a friend's house where she stayed until the evening. Appellant sent Triplett several

text messages while she was gone and accused her of having an affair. Triplett returned to the apartment at 9 p.m. and Appellant began yelling at her. He also shoved her around the apartment. Triplett turned to leave the apartment when Appellant grabbed her and threw her into the hallway. He forced her into the bedroom and suddenly kicked her in the ribs which caused her to fly into the wall and fall to the floor. Triplett described it as a "karate kick jump." Triplett could not breathe and felt tremendous pain in the rib area. While Triplett was on the floor clutching her ribs, Appellant began punching her in the back, neck, and head. He also put both hands around her neck and choked her until she could not breathe until he suddenly stopped and returned to the living room to watch television. After a few minutes, Triplett went into the living room and told Appellant she needed to go to the hospital but Appellant initially refused because he thought they would think he had beat her up. Appellant eventually relented and took Triplett to the VA hospital but he dropped her off about one hundred yards from the entrance. The medical records and photographs taken at the hospital reflect that Triplett had a broken rib and multiple bruises, including bruises on her neck.

Appellant testified that he is a Vietnam veteran and he has been 100 percent disabled since 1981. He has had two spinal laminectomy surgeries and his knees are held together by screws. Additionally, his left thumb has been "totally reconstructed." He was convicted of aggravated assault with a deadly weapon and attempted murder in 2000. Appellant recalled that when he left the apartment on June 1, 2009, Triplett was going to do the dishes and start looking for a job because she had recently been fired. She needed to work because he had recently moved into a more expensive apartment to accommodate her. When he returned to the apartment from a doctor's appointment at about 12:15 p.m., he noticed that the dishes had not been done and Triplett was not home. She had not opened the newspaper to the classified section, so he called her and asked where she was. Based on what she told him, Appellant

decided Triplett needed to move out and he would move back to the smaller apartment because she did not want to work. Appellant got some boxes out of the storage shed and told Triplett in a text that she needed to pack up her belongings and leave. When Triplett returned, Appellant saw that she was intoxicated. He told her that she could not even sit down and she needed to just pack up and leave. Appellant denied hitting or punching Triplett. He denied kicking her and said that if he jumped it would "crack the bones" in his leg and back. Despite these denials, he admittedly took Triplett to the hospital when she asked. He dropped her off outside of the gate to Fort Bliss because he did not have auto insurance and could not drive on base without it.

The jury found Appellant not guilty of aggravated assault (Count I) but found him guilty of family violence assault (Count II). Appellant elected that his punishment would be determined by the trial court. Appellant entered a plea of true to the enhancement paragraph and the trial court found Appellant had previously been convicted of attempted murder. The court assessed Appellant's punishment at imprisonment for a term of twelve years.

## PROSECUTORIAL MISCONDUCT

Appellant raises three issues related to alleged prosecutorial misconduct that occurred when the prosecutor asked Appellant whether he had been convicted of attempted murder for shooting his ex-wife. Appellant had previously been convicted of attempted murder and aggravated assault with a deadly weapon (firearm). Prior to trial, the trial court granted Appellant's motion *in limine* and required the State to approach the bench before attempting to go into the facts underlying Appellant's prior convictions. Appellant testified during the guilt-innocence phase and admitted he had been convicted on October 25, 2000 of aggravated assault with a deadly weapon and attempted murder. During cross-examination by the State, Appellant testified that he did not have problems with his temper. The prosecutor then asked him: "And you pled guilty to attempted murder for having shot your ex-wife?" The trial court sustained

- 3 -

Appellant's objection that the State could not question him about the underlying facts of the prior conviction and the court instructed the jury to disregard the prosecutor's question. The court denied Appellant's request for a mistrial. Later during cross-examination, the prosecutor asked Appellant whether, despite having all of his injuries, he had the physical capability to commit the offenses of aggravated assault and attempted murder, and Appellant admitted that he did.

*Denial of Motion for Mistrial*

We will begin with Issue Three which is related to the trial court's denial of Appellant's motion for mistrial. We review a trial court's ruling on a motion for mistrial for an abuse of discretion. *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex.Crim.App. 2004); *Wead v. State*, 129 S.W.3d 126, 129 (Tex.Crim.App. 2004). A mistrial is the trial court's remedy for improper conduct that is so prejudicial and incurable that expenditure of further time and expense would be wasteful and futile. *Hawkins*, 135 S.W.3d at 77; *Ladd v. State*, 3 S.W.3d 547, 567 (Tex.Crim.App. 1999). The determination of whether a given error necessitates a mistrial must be made by examining the particular facts of the case. *Ladd*, 3 S.W.3d at 567. To determine whether a trial court abused its discretion in denying a defendant's motion for a mistrial, we consider three factors: (1) the severity of the misconduct; (2) the measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the trial court); and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction). *Hawkins*, 135 S.W.3d at 77.

Looking first at the severity of the misconduct, it is undisputed that the prosecutor confused the facts of the two prior convictions when he asked Appellant whether he had pled guilty to attempted murder for shooting his ex-wife. The aggravated assault conviction involved a firearm but the attempted murder conviction did not. The judgment of conviction reflects that the court made an affirmative finding that Appellant's hands were deadly weapons.

- 4 -

Consequently, the prosecutor's question was based on inaccurate facts. We do not necessarily agree that the prosecutor's attempt to go into the underlying facts of the conviction was improper because the details of the prior attempted murder conviction might have been admissible to rebut Appellant's defense that he was physically unable to assault Triplett. The trial court overruled Appellant's objections and permitted the State to cross-examine Appellant generally on this matter but the prosecutor did not attempt to go into the facts of the prior convictions. Because that theory of admissibility was not fully developed at trial, we will assume for the sake of argument that the prosecutor's attempt to go into the details of the prior conviction was improper impeachment. The prosecutor could, however, properly ask Appellant whether he had been convicted of attempted murder on October 25, 2000 in the 41st District Court. The prosecutor asked the improper portion of the question only once. We conclude that the prejudicial effect of the question was slight.

The trial court promptly instructed the jury to disregard the prosecutor's question. In the absence of anything in the record leading us to conclude that the jury did not or could not obey the trial court's instruction, we will presume that jury followed the trial court's instruction. *See Gamboa v. State*, 296 S.W.3d 574, 580 (Tex.Crim.App. 2009)(a reviewing court generally considers instructions given to the jury to be sufficient to remedy most improprieties that occur during a trial and presumes that a jury will follow the trial court's instructions).

Finally, with regard to the strength of the evidence supporting Appellant's conviction, the jury had to decide the case based on the competing testimony of Triplett and Appellant. Triplett's description of the assault is corroborated by medical evidence and photographs. While Appellant claimed he did not have a temper and did not have the physical ability to assault Triplett, the State properly impeached Appellant with evidence he had previously been convicted of two violent crimes, attempted murder and aggravated assault.

- 5 -

A mistrial is reserved for those rare circumstances when the objectionable action was so emotionally inflammatory that curative instructions are not likely to prevent the jury from being unfairly prejudiced against the defendant. *Young v. State*, 137 S.W.3d 65, 71 (Tex.Crim.App. 2004). We conclude that the improper portion of the prosecutor's question was not so inflammatory that the trial court's instruction to disregard would have been ineffective in preventing unfair prejudice. Having found no abuse of discretion, we overrule Issue Three.

*Denial of Motion for New Trial*

In Issues One and Two, Appellant contends that the trial court erred by denying his motion for new trial based on prosecutorial misconduct and violation of the order *in limine*. These issues relate to the same facts as in Issue Three.

Appellant filed a motion for new trial raising the issue of prosecutorial misconduct based on the prosecutor attempting to elicit details about the attempted murder conviction during cross-examination. At the hearing, the prosecutor admitted he should have approached the bench before asking Appellant any details about the attempted murder conviction. The trial court denied the motion for new trial.

We review the trial court's denial of a motion for new trial for an abuse of discretion. *Webb v. State*, 232 S.W.3d 109, 112 (Tex.Crim.App. 2007). We view the evidence in the light most favorable to the trial court's ruling and uphold the ruling if it falls within the zone of reasonable disagreement. *Webb*, 232 S.W.3d at 112. Further, we do not substitute our judgment for that of the trial court, but rather we decide whether the trial court's decision was arbitrary or unreasonable. *Id.*

We examine claims of prosecutorial misconduct on a case-by-case basis. *Stahl v. State*, 749 S.W.2d 826, 830 (Tex.Crim.App. 1988); *Perkins v. State*, 902 S.W.2d 88, 96 (Tex.App.-- El Paso 1995, no pet.). Prosecutorial misconduct has been found where: (1) the prosecutor's

actions deliberately violated an express court order; (2) where the prosecutor's misconduct was so blatant as to border on being contumacious; and (3) where the prosecutor asked a question which was clearly calculated to inflame the minds of the jury and was of such a character so as to suggest the impossibility of withdrawing the impression produced. *See Stahl*, 749 S.W.2d at 831; *Perkins*, 902 S.W.2d at 96.

Appellant's claim is based on a single violation of the order *in limine*. There is no evidence in the record that the prosecutor deliberately violated the order to elicit inadmissible evidence or that his conduct was so blatant that it bordered on being contumacious. Finally, as we have already discussed, the prosecutor's question is not so inflammatory that the trial court's prompt instruction could not have cured any prejudice caused by it. Accordingly, the trial court did not abuse its discretion by denying the motion for new trial. We overrule Issues One and Two. Having overruled all issues for review, we affirm the judgment of the trial court.

January 16, 2012

_____
ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, J., and Chew, C.J. (Senior)
Chew, C.J. (Senior), sitting by assignment

(Do Not Publish)