In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-04-00016-CR
______________________________


DAMON EARL LEWIS, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 8th Judicial District Court
Hopkins County, Texas
Trial Court No. 0216853


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Carter


MEMORANDUM OPINION

            Damon Earl Lewis appeals from his conviction by jury trial of four counts of aggravated
sexual assault of a child and one count of indecency with a child. The jury assessed his punishment
at ninety-nine years' imprisonment for each count of the aggravated sexual assault and twenty years'
imprisonment for the indecency with a child. The trial court sentenced Lewis consistent with the
jury's verdict, with the sentences to run concurrently. Multiple indictments alleging aggravated
sexual assault and indecency with a child, including the four indictments giving rise to the four
appeals, were tried together. Four appeals are presently pending before this Court. This appeal
concerns a conviction for aggravated sexual assault. Lewis raises identical issues and makes
identical arguments in all four appeals.
            Lewis raises five issues on appeal. The issues are: (1) did the trial court err in admitting
evidence Lewis failed to take a polygraph test he had previously agreed to take, (2) did the trial court
err in admitting a letter handwritten by Lewis, (3) does Article 38.072 of the Texas Code of Criminal
Procedure authorize the use of a videotaped interview as an outcry statement, (4) was Lewis denied
the right to effective assistance of counsel, and (5) is the evidence legally and factually sufficient? 
We affirm the judgment of the trial court.
            Although two child victims were alleged by the State, all of the convictions were for charges
filed concerning C.C. Sheri Cook, C.C.'s mother, testified that Lewis had been her boyfriend since
C.C. was three or four and that C.C. considered Lewis her father. C.C., who was thirteen at the time
of trial, testified Lewis had molested her since she was nine years old by reaching underneath her
clothes and penetrating her genetalia with his finger (constituting the four counts of aggravated
sexual assault). Although C.C. testified that Lewis did not always touch her breasts, she testified that
Lewis did fondle her breasts on one occasion (constituting the count for indecency with a child).
Error Not Preserved Concerning Polygraph Evidence
            In his first point of error, Lewis argues the trial court erred by allowing the State to elicit
testimony that Lewis had agreed to take a polygraph, but never took one. Jim Wright, the chief
investigator with the Hopkins County Sheriff's Office, testified Lewis was offered a polygraph and
agreed to take one. However, Lewis failed to appear for the scheduled test. Wright testified Lewis
told him he did not have a vehicle to drive to the test location. The State argued that Lewis's failure
to take the polygraph was evidence of "consciousness of guilt." Lewis contends the admission of
Wright's testimony constitutes reversible error. On appeal, the State argues error was not preserved.
            Generally, in order to preserve a complaint for appellate review, the record must show
(1) that the complaint was made to the trial court by a request, objection, or motion that was timely
and sufficiently specific to make the trial court aware of the grounds of the complaint and (2) that
the trial court ruled adversely. Tucker v. State, 990 S.W.2d 261, 262 (Tex. Crim. App. 1999); see
Geuder v. State, 115 S.W.3d 11, 13 (Tex. Crim. App. 2003). Complaints concerning the admission
of polygraph evidence are not exempt from the requirement that an appellant must preserve error.


 
            No objection was made concerning the introduction of evidence that Lewis agreed to take
a polygraph, but then failed to take the test. To the contrary, Lewis's attorney stated, during the
bench conference on the issue, which was requested by the State, that he agreed with the State the
evidence was probably admissible. Since error was not preserved for appellate review, we overrule
the first point of error.
The Trial Court Did Not Err in Admitting the Letter
            Lewis's second point of error argues that the trial court erred in admitting the handwritten
letter. Lewis contends the letter is hearsay and the State did not prove that an exception to the
hearsay rule applies. The trial court overruled Lewis's objection without a response from the State.
            A trial court's decision on the admissibility of evidence is reviewed for an abuse of discretion. 
Bee v. State, 974 S.W.2d 184, 187 (Tex. App.—San Antonio 1998, no pet.). A trial court abuses its
discretion when its decision falls outside "the zone of reasonable disagreement." Salazar v. State,
38 S.W.3d 141, 153–54 (Tex. Crim. App. 2001). The test for an abuse of discretion is not whether,
in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action;
rather, it is a question of whether the court acted without reference to any guiding rules or principles,
and the mere fact that a trial court may decide a matter within its discretionary authority differently
than an appellate judge does not demonstrate such an abuse. Montgomery v. State, 810 S.W.2d 372,
391 (Tex. Crim. App. 1990) (op. on reh'g). Although the State did not specify a basis for the letter's
admissibility, we must sustain the trial court's decision if it is correct under any theory of law. "[I]f
the decision of the trial court is correct on any theory of law which finds support in the evidence it
will be sustained." Bee, 974 S.W.2d at 190; see McDuff v. State, 939 S.W.2d 607, 619 (Tex. Crim.
App. 1997).
            The letter at issue appears to be a suicide note from Lewis to Cook, his girlfriend, which she
found in her house after Lewis had moved out. Cook testified that the letter, which is signed "Earl,"
was written in Lewis's handwriting. In the letter, Lewis implies he must commit suicide to keep
himself from hurting anyone else. Lewis wrote: "by the time you find this letter you would have ben
[sic] told of my death" and stated "so you know in your hurt [sic] that I have no coice [sic] left to me
but to do what I must to stop that dark side from ever comen [sic] out of me." However, Lewis never
explicitly admits the assault. Lewis states, 
I could never consiley [sic] do something like that to my daughter . . . if I did do this
to my baby girl I must have a sickness & evil in me that must be stoped [sic] befor
[sic] it can hurt aneyone [sic] ealis [sic] I love . . . the only thing I can think of is I
could not have knowed [sic] what I was doing if I did this & that relley [sic] scars
[sic] me . . . could I have another side of me that I don't know about, a part of me that
could do something this horable [sic] to my daughter, I can not bear the thouht [sic]
of liven [sic] with it if I do . . . . 

            The State argues the letter is admissible as an admission by a party.


 Under
Rule 801(e)(2)(A), a statement made by a party and offered against the party is not hearsay and is
admissible without corroboration. Tex. R. Evid. 801(e)(2)(A); Serrano v. State, 936 S.W.2d 387,
392 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd); see Bingham v. State, 987 S.W.2d 54, 56
n.2 (Tex. Crim. App. 1999). A letter containing facts tending to show guilt is admissible as an
admission. Jacobs, 951 S.W.2d at 901 (letter is admissible in which defendant implicitly admitted
his commission of the assault and requested his wife to fabricate an alibi for him).
            The question remains, though, as to whether the letter qualifies as a party admission. 
Rule 801(e)(2)(A) does not require a statement to admit an element of an offense in order to qualify
as an admission. Perkins v. State, 902 S.W.2d 88, 98–99 (Tex. App.—El Paso, pet. ref'd),
supplemented by, 905 S.W.2d 452 (Tex. App.—El Paso 1995, pet. ref'd). "An admission is an
acknowledgment by the accused of facts that tend to prove his guilt." Jacobs, 951 S.W.2d at 901. 
Whether the letter admitted facts which tend to show the guilt of the accused falls within the zone
of reasonable disagreement. As such, we cannot conclude the trial court abused its discretion in
admitting the letter. We overrule the second point of error.
The Trial Court Erred in Admitting the Videotape
            In his third point of error, Lewis argues the trial court erred in admitting a videotape of an
interview of C.C. by Kathy Smedley, a sexual assault nurse examiner. At the trial, defense counsel
objected that the videotape did not qualify under either Article 38.071 or Article 38.072 of the Texas
Code of Criminal Procedure, which governs the admission of videotaped interviews of children
unavailable to testify.


 When asked by the trial court if the videotape was being introduced under
Article 38.071 or under Article 38.072, the State informed the trial court that the child would testify
(she did) and that it intended to introduce a videotaped interview as an "outcry" statement under
Article 38.072.


 The objections of defense counsel were overruled.
            The videotape containing the interview of C.C. was hearsay. It was therefore admissible only
if some exception applied. At trial, the only suggested authority for such admission lies in Article
38.072. However, on appeal the State argues the trial court properly admitted the videotape as a
statement for the purpose of medical treatment. 
            Hearsay is not admissible except as provided by statute or by the Texas Rules of Evidence. 
Tex. R. Evid. 802; Long v. State, 800 S.W.2d 545, 547 (Tex. Crim. App. 1990). Article 38.072 of
the Texas Code of Criminal Procedure creates an exception to the hearsay rule for statements of child
abuse victims if all the requisite conditions are met. Josey v. State, 97 S.W.3d 687, 692 (Tex.
App.—Texarkana 2003, no pet.). We note that the trial court has broad discretion to determine
whether the child's statement falls within the hearsay exception. The exercise of that discretion will
not be disturbed unless the record shows a clear abuse of discretion. Weatherred v. State, 15 S.W.3d
540, 542 (Tex. Crim. App. 2000); Tear v. State, 74 S.W.3d 555, 558 (Tex. App.—Dallas 2002, pet.
ref'd). We will not reverse on appeal unless the trial court's decision is outside the zone of
reasonable disagreement. Weatherred, 15 S.W.3d at 542; Josey, 97 S.W.3d at 692.
            On appeal, the State contends the videotape is admissible as statements for medical diagnosis
or treatment. See Tex. R. Evid. 803(4). The State did not make this argument at trial. Statements
made for the purposes of medical diagnosis or treatment are excepted from the hearsay rule. Tex.
R. Evid. 803(4); Rodgers v. State, 111 S.W.3d 236, 243 (Tex. App.—Texarkana 2003, no pet.). 
"This exception is based on the assumption that the patient understands the importance of being
truthful with the medical personnel involved to receive an accurate diagnosis and treatment." Burns
v. State, 122 S.W.3d 434, 438 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd); Beheler v. State,
3 S.W.3d 182, 188 (Tex. App.—Fort Worth 1999, pet. ref'd). 
            There is no evidence that C.C. understood she was seeing the therapist for purposes of
medical treatment in connection with the abuse. If it is reasonable to infer that the child understood
that he or she was receiving therapy for purposes of medical treatment in connection with the abuse,
his or her statements are admissible.


 Although Smedley testified she has counseled children, there
is no evidence C.C. was informed that the interview was for the purpose of medical treatment. There
is no evidence C.C. made the statements for the purpose of obtaining medical treatment. Without
such evidence, the statements do not qualify as statements for the purpose of medical diagnosis.


 
In order for a statement to be admissible under the medical diagnosis or treatment exception, the
declarant must make the statement for purpose of medical diagnosis or treatment and with the
understanding that giving the statement is part of the diagnostic, treatment, or therapy process. See
Wilder, 111 S.W.3d at 256 (statements made to a licensed professional counselor were made with
the understanding that the victim was receiving therapy and made for purposes of medical diagnosis
and treatment); see also Fleming v. State, 819 S.W.2d 237, 247 (Tex. App.—Austin 1991, pet. ref'd)
("statement must be reasonably pertinent to diagnosis or treatment"). "If a witness's testimony fails
to meet Rule 803(4)'s criteria requiring that the statements be made to medical personnel in the
course of diagnosis and treatment, then that testimony cannot overcome the hearsay rule." Moore
v. State, 82 S.W.3d 399, 404 (Tex. App.—Austin 2002, pet. ref'd). The State has not shown that the
statement qualifies as a statement for medical treatment or diagnosis.
            As this Court stated in Divine v. State, 122 S.W.3d 414, 418 (Tex. App.—Texarkana 2003,
pet. ref'd), and in Dunn v. State, 125 S.W.3d 610, 614 (Tex. App.—Texarkana 2003, no pet.), Article
38.072 does not authorize the introduction of a videotape of the alleged "outcry." Article 38.072
does not contemplate that a videotape of the "outcry" will be introduced. It clearly contemplates that
a person, subject to confrontation and cross-examination, will testify about what was said. "This
Court has repeatedly emphasized that a videotape is not a person; therefore Article 38.072 cannot
apply to it." Divine, 122 S.W.3d at 418.
            Similar to several other cases recently decided by this Court, the interviewer in this case was
allowed to testify about the videotape of the interview and provided a play-by-play commentary on
the interview while the videotape itself was played for the jury. Id.; Dunn, 125 S.W.3d at 614;
Edwards, 107 S.W.3d at 111; Josey, 97 S.W.3d at 687. Because the trial court's decision to admit
the videotape into evidence allowed evidence into the record in violation of the Texas statute, the
ruling of the trial court is outside the zone of reasonable disagreement. Therefore, the trial court
abused its discretion by admitting the evidence. We sustain Lewis's third point of error.
            The next step in the analysis is whether the error resulted in harm. The Texas Court of
Criminal Appeals has stated in dicta that "[e]xcept for certain federal constitutional errors labeled
by the United States Supreme Court as 'structural,' no error, whether it relates to jurisdiction,
voluntariness of a plea, or any other mandatory requirement, is categorically immune to a harmless
error analysis." Cain v. State, 947 S.W.2d 262, 264 (Tex. Crim. App. 1997) (citations omitted). 
Improper admission of hearsay evidence is nonconstitutional error. See Johnson v. State, 967
S.W.2d 410, 417 (Tex. Crim. App. 1998). 
            The standard of review for harm analysis when evidence is improperly admitted is that for
nonconstitutional errors under Texas Rule of Appellate Procedure 44.2(b). Tex. R. App. P. 44.2(b);
James v. State, 102 S.W.3d 162, 179 (Tex. App.—Fort Worth 2003, pet. ref'd). Under the Rules of
Appellate Procedure for nonconstitutional errors, we are to disregard errors, defects, irregularities,
or variances that do not affect the substantial rights of the accused. Tex. R. App. P. 44.2(b). A
"substantial right" is affected when the error had a substantial and injurious effect or influence in
determining the jury's verdict. Id.; Johnson v. State, 43 S.W.3d 1, 4 (Tex. Crim. App. 2001) (citing
Kotteakos v. United States, 328 U.S. 750 (1946)); King v. State, 953 S.W.2d 266, 271 (Tex. Crim.
App. 1997). If, on the record as a whole, it appears the error "did not influence the jury, or had but
a slight effect," we must consider the error harmless and allow the conviction to stand. Johnson, 967
S.W.2d at 417. In so doing, we must assess harm, but there is no burden on either an appellant or
on the state to demonstrate that harm. Schutz v. State, 63 S.W.3d 442, 444 (Tex. Crim. App. 2001);
Johnson, 43 S.W.3d at 4. The parties may suggest how such harm is shown, but no allocated
burdens of proof exist. Schutz, 63 S.W.3d at 444.
            In order to properly conduct a harm analysis under Rule 44.2(b), we are to determine whether
the error affected a substantial right of the defendant. The Texas Court of Criminal Appeals has
opined that, in order to make this determination, we must decide whether the error had a substantial
or injurious effect on the jury's verdict. Llamas v. State, 12 S.W.3d 469, 471 n.2 (Tex. Crim. App.
2000). When an improperly admitted videotape "essentially repeated the testimony" of the victim,
the victim also testifies, and the videotape is cumulative of the victim's properly admitted testimony
on the same issue, courts often disregard the error, reasoning that it could not have affected the
appellant's substantial rights. Jensen v. State, 66 S.W.3d 528, 537 (Tex. App.—Houston [14th Dist.]
2002, pet. ref'd); Matz v. State, 21 S.W.3d 911, 912 (Tex. App.—Fort Worth 2000, pet. ref'd) (op.
on remand).
            The majority of the videotape is merely cumulative of C.C.'s testimony at trial. The only
major variances between the information on the videotape and C.C.'s testimony at trial were that
C.C. stated in the videotape Lewis molested her at least fifteen times and that the last time Lewis had
molested her was in January. At trial, C.C. testified Lewis had molested her "[a] lot" instead of the
more specific statement on the videotape that Lewis had molested her at least fifteen times. With
these exceptions, C.C.'s testimony was merely cumulative of her testimony at trial. We cannot
conclude that these minor differences had a substantial and injurious effect or influence in
determining the jury's verdict. Thus, the error in admitting the videotape was harmless.
Lewis Failed to Show He Received Ineffective Assistance of Counsel
            Lewis contends in his fourth point of error that he received ineffective assistance of counsel. 
Lewis's argument focuses on four alleged deficiencies: 1) failure to object to the evidence that Lewis
failed to take the polygraph test he had agreed to take, 2) failure to object to the State's reference in
its final argument to the videotape, 3) failure to object to the State's reference during final argument
to the demeanor of Lewis, and 4) failure to present any mitigating evidence during the punishment
phase. 
            Both the Sixth Amendment and the Texas Constitution confer a right to effective
representation by counsel. U.S. Const. amend. VI; Tex. Const. art. I, § 10. If counsel's
performance is ineffective, the conviction cannot stand. The Texas Court of Criminal Appeals has
held that the Texas Constitution does not impose a higher standard than the Sixth Amendment. 
Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994); Hernandez v. State, 726 S.W.2d 53,
56–57 (Tex. Crim. App. 1986). The Sixth Amendment standard, established by Strickland, requires
a defendant alleging ineffective assistance of counsel to show that his or her counsel's performance
at trial was deficient and that counsel's deficient performance prejudiced his or her defense. See
Strickland v. Washington, 466 U.S. 668 (1984); see also Bone v. State, 77 S.W.3d 828, 833 (Tex.
Crim. App. 2002). An ineffective assistance of counsel claim cannot be based on a difference of
opinion concerning strategy. "[T]he defendant must prove, by a preponderance of the evidence, that
there is . . . no plausible professional reason for a specific act or omission." Bone, 77 S.W.3d at 836. 
            To satisfy the deficiency prong of the test, Lewis must prove by a preponderance of the
evidence that his counsel's representation fell below the objective standard of professional norms.
Id. at 833. There is a strong presumption that counsel's performance was adequate. Id. The reason
for this presumption is that counsel at trial is better positioned to judge matters of strategy than an
appellate court reviewing a cold record. An appellate court should not "conclude the challenged
conduct constituted deficient performance unless the conduct was so outrageous that no competent
attorney would have engaged in it." Garcia v. State, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001). 
            Lewis's ineffective assistance of counsel argument stresses the failure of trial counsel to
object to the introduction of evidence that Lewis failed to take a polygraph test after having agreed
to take one. Investigator Wright testified Lewis was offered a polygraph test and agreed to take one. 
However, Lewis failed to appear for the scheduled test. Wright testified Lewis told him he did not
have a vehicle to drive to the test location. 
            Texas courts have long refused to permit the results of polygraph tests to be admitted at trial,
for either the defendant or the state. Robinson v. State, 550 S.W.2d 54, 59 (Tex. Crim. App. 1977);
Long, 10 S.W.3d at 398. The United States Supreme Court has held the exclusion of polygraph
evidence did not unconstitutionally abridge the right of a defendant to present a defense because
"there is simply no consensus that polygraph evidence is reliable." United States v. Scheffer, 523
U.S. 303, 309 (1998). The policy of the exclusion is based on the inherent unreliability of a
polygraph test and its tendency to be unduly persuasive. Marcum v. State, 983 S.W.2d 762, 765
(Tex. App.—Houston [14th Dist.] 1998, no pet.). In rare circumstances, polygraph evidence
erroneously admitted at trial has "opened the door" to further inadmissible evidence regarding
polygraph results. Long, 10 S.W.3d at 398–99 (citing Lucas v. State, 479 S.W.2d 314, 315 (Tex.
Crim. App. 1972); Patteson v. State, 633 S.W.2d 549, 552 (Tex. App.—Houston [14th Dist.] 1982,
no pet.)). Polygraph evidence has also generally been excluded due to potential sources of error in
the test itself, including the competency of the examiner, the tendency of the jury to place too much
reliance on the test results, the lack of standardization of test procedures, and the difficulty for jury
evaluation of examiners' opinions. Romero, 493 S.W.2d at 210–11. Both the existence and the
results of a polygraph examination are inadmissible. Reed v. State, 48 S.W.3d 856, 858 (Tex.
App.—Texarkana 2001, pet. ref'd).
            We note that Lewis cites Cardenas v. State, 960 S.W.2d 941, 948 (Tex. App.—Texarkana
1998, pet. ref'd), for the proposition that the admission of evidence concerning a polygraph test may
be reversible error. Cardenas concerned inclusion of the results of a polygraph test in the
presentence investigation report, as well as an assertion that the defendant had been misled in
pleading nolo contendere. Id. This Court found trial counsel erred by failing to object to the
inclusion of the test results. Id. Although this Court found that trial counsel's performance was
ineffective, the opinion explicitly stated that "we do not address the failure of counsel to object to
the polygraph test as a part of the basis for this ruling." Id. In Cardenas, trial counsel had also
"actively misled" the defendant to believe he could withdraw his plea of nolo contendere if the trial
court did not place him on community supervision for indecency with a child. Id. at 942–46. The
appellant in Cardenas waived his right to a jury trial when the trial court did not have authority to
place him on community supervision, but a jury could have. Id. at 947. The plea of nolo contendere
formed the basis of the conclusion that trial counsel was ineffective. Id. at 948. Cardenas is clearly
distinguishable from the current case.
            Lewis argues that the failure to object is below the reasonable standards of competence
expected from trial counsel. A failure to object to inadmissible evidence is an act of omission that
may give rise to ineffective assistance of counsel. Alvarado v. State, 775 S.W.2d 851, 857 (Tex.
App.—San Antonio 1989, pet. ref'd). While Lewis's trial counsel erred in failing to object, such
error does not by itself render counsel's performance deficient. It is significant to note that the
evidence admitted did not introduce the results of a polygraph test, but rather only that Lewis agreed
to take a test but did not. While such evidence is inadmissible and Lewis's counsel erred in not
objecting to the polygraph evidence, such error is not egregious enough on its own to render trial
counsel's performance deficient. The constitutional right to counsel does not mean errorless counsel. 
Ex parte Kunkle, 852 S.W.2d 499, 505 (Tex. Crim. App. 1993); Ex parte Welborn, 785 S.W.2d 391,
393 (Tex. Crim. App. 1990). 
            Lewis also argues his trial counsel was ineffective for failing to object to certain closing
arguments, which he alleges were improper. Failure to object to an improper closing argument may
be ineffective assistance of counsel. Valencia v. State, 946 S.W.2d 81, 83–84 (Tex. Crim. App.
1997), modified sub silencio, Hernandez v. State, 988 S.W.2d 770, 770 (Tex. Crim. App. 1999). 
During closing argument at the guilt/innocence stage of the trial, the State referred to the videotape
testimony, the polygraph test, and the demeanor of the defendant. In referring to Lewis's demeanor,
the State argued: 
And then you saw [C.C.] right up here. That man staring her down. We all
saw that, didn't we? Him staring her down. And you saw her right there on that
stand, with her hand over her face because she can't even look at him, tell you what
happened. Was she faking? Was that an act? Was that fake? No, that wasn't fake.

During punishment, the State argued "[t]he rest of his life he's going to think of a nine year old little
girl and be sexually aroused by it. We all know that." 
            The State erred in commenting on Lewis's demeanor during the closing argument at the
guilt/innocence phase of the trial. The Texas Court of Criminal Appeals has "recognized that, during
closing argument at the guilt/innocence phase, a prosecutor may not properly comment upon the
defendant's demeanor in the courtroom, since the defendant's demeanor in the courtroom is not
evidence of guilt." Wead v. State, 129 S.W.3d 126, 130 (Tex. Crim. App. 2004); see Good v. State,
723 S.W.2d 734, 737 (Tex. Crim. App. 1986). While the State erred in commenting on Lewis's
demeanor, we must determine if the failure to object to this error by Lewis's trial counsel constituted
a deficient performance. 
            Lewis's trial counsel could have decided not to object due to strategic concerns. "If counsel's
reasons for his conduct do not appear in the record and there is at least the possibility that the
conduct could have been legitimate trial strategy, we will defer to counsel's decisions and deny relief
on an ineffective assistance claim on direct appeal." Murphy v. State, 112 S.W.3d 592, 601 (Tex.
Crim. App. 2003); Ortiz v. State, 93 S.W.3d 79, 88–89 (Tex. Crim. App. 2002). The record contains
no indication of Lewis's trial counsel's reasons for not objecting to these arguments. The record does
not indicate that counsel's failure to object did not stem from a conscious and deliberate decision. 
Since there is no evidence of counsel's reasons for his conduct, we must defer to counsel's decision
if there is at least the possibility that the conduct could have been legitimate trial strategy. The
failure to object could have stemmed from trial strategy. This Court should not consider the wisdom
of such a strategy, since ineffective assistance of counsel claims cannot be "built on retrospective
speculation." Bone, 77 S.W.3d at 835. "[T]he defendant must prove, by a preponderance of the
evidence, that there is . . . no plausible professional reason for a specific act or omission." Id. at 836. 
Since there are plausible trial strategies for not objecting to these closing arguments, Lewis has not
shown that his trial counsel's performance was deficient for failing to object to the State's closing
arguments.
            Lewis briefly argues that trial counsel's failure to present mitigating evidence at punishment
was ineffective. We note that the failure to call witnesses may be ineffective assistance of counsel. 
Butler v. State, 716 S.W.2d 48, 55 (Tex. Crim. App. 1986) (failure to present available alibi
witnesses deemed ineffective assistance of counsel). However, such witnesses must be shown to be
available and to actually benefit the defense. Id.; Bates v. State, 88 S.W.3d 724, 728 (Tex.
App.—Tyler 2002, pet. ref'd); Simms v. State, 848 S.W.2d 754, 758 (Tex. App.—Houston [1st Dist.]
1993, pet. ref'd). We note Lewis's trial counsel did solicit mitigating testimony from Cook at the
punishment phase that Lewis was a hard worker and helped provide for C.C. and Cook. Because
Lewis has made no showing that any additional mitigating evidence was available, he has failed to
show that trial counsel's performance was deficient due to failure to present mitigating evidence.
            While there is no plausible professional reason for not objecting to the introduction of the
polygraph evidence, Lewis's trial counsel's performance must be evaluated under the totality of the
circumstances. Ineffective assistance of counsel claims must be based on the totality of the
circumstances. Strickland, 466 U.S. at 693; Welborn, 785 S.W.2d at 393. Lewis contends the failure
to object to the polygraph evidence, coupled with the other failures of Lewis's trial counsel, made
counsel's performance outside the range of acceptable competence. "The right to 'reasonably
effective assistance of counsel' does not guarantee errorless counsel, or counsel whose competency
is to be judged by hindsight." Kunkle, 852 S.W.2d at 505. Lewis's trial counsel performed
adequately throughout the rest of the trial. Lewis's trial counsel made proficient opening and closing
statements. He objected numerous times and performed proficient cross-examinations. He also filed
numerous pretrial and trial motions. Lewis's trial counsel filed a motion for directed verdict and
received a directed verdict with the agreement of the State on two counts of the indictment. Under
the totality of the circumstances, Lewis has failed to show, based on the record before us, that his
trial counsel's performance was ineffective under the totality of the circumstances.
            Further, Lewis has not shown a reasonable probability of a different outcome. The second
prong of the ineffective assistance of counsel test is whether the defendant's trial was prejudiced by
his or her trial counsel's deficiency. Texas law requires Lewis to meet both prongs of Strickland. 
Lewis contends that the errors together created a reasonable probability that, but for counsel's errors,
Lewis would not have been convicted. A defendant does not meet his or her burden by merely
showing that an error had some conceivable effect on the outcome of the trial. Strickland, 466 U.S.
at 693. The defendant must show a "reasonable probability" that, but for the error, the result of the
trial would have been different. Id. at 694. "A reasonable probability is a probability sufficient to
undermine confidence in the outcome." Thompson, 9 S.W.3d at 812. Lewis has not demonstrated
that the probability of a different result is sufficient to undermine confidence in the outcome.


 
Because Lewis has not shown that his trial counsel's performance was deficient under the totality of
the circumstances and because Lewis has failed to show a reasonable probability that the result of
the trial would have been different, we overrule Lewis's fourth point of error.
The Evidence was Legally and Factually Sufficient
            In his last point of error, Lewis argues that the evidence is legally and factually insufficient
to support the jury's verdict. We disagree. There was sufficient evidence introduced at trial to
sustain the jury's finding of guilt.
            In our review of the legal sufficiency of the evidence, we employ the standards set forth in
Jackson v. Virginia, 443 U.S. 307, 319 (1979). This calls on the court to view the relevant evidence
in the light most favorable to the verdict and determine whether any rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt. Johnson v. State, 23 S.W.3d
1, 7 (Tex. Crim. App. 2000); Turner v. State, 805 S.W.2d 423, 427 (Tex. Crim. App. 1991). 
            Lewis was convicted of four counts of aggravated sexual assault of a child and one count of
indecency with a child. In order to prove aggravated sexual assault, the State must prove that Lewis
intentionally or knowingly caused the penetration of the sexual organ of a child and that the victim
was younger than fourteen years of age. Tex. Pen. Code Ann. § 22.021 (Vernon Supp. 2004–2005). 
Lewis was convicted of one count of indecency with a child. Indecency with a child occurs when
a person has "sexual contact" with a child younger than seventeen years old who is not the spouse
of that person. Tex. Pen. Code Ann. § 21.11(a)(1) (Vernon 2003). Sexual contact is any touching
by a person of the breast of a child with intent to arouse or gratify the sexual desire of any person. 
Tex. Pen. Code Ann. § 21.11(c)(1) (Vernon 2003). The four different indictments allege that Lewis
committed both aggravated sexual assault and indecency with a child on or about September 1, 1998;
August 27, 1999; August 27, 2000; and January 31, 2001. The jury found that Lewis committed
aggravated sexual assault as alleged in all four of these indictments, but only found Lewis guilty of
one of the four alleged counts of indecency with a child. Lewis was convicted of touching the
breasts of C.C., a child younger than seventeen years of age, with intent to arouse or gratify his
sexual desires on or about January 31, 2001. This appeal is concerned with the aggravated sexual
assault which occurred on or about September 1, 1998. The other three appeals pending before this
Court concern the remaining three counts of aggravated sexual assault and the one count of
indecency with a child.
            We note that the videotape may be considered in a legal and factual sufficiency review. "In
applying the Jackson sufficiency review, an appellate court 'must consider all evidence which the
jury was permitted, whether rightly or wrongly, to consider.'" Moff v. State, 131 S.W.3d 485, 488
(Tex. Crim. App. 2004). "[T]he same rule and reasoning are applicable to a factual sufficiency
review." Camarillo v. State, 82 S.W.3d 529, 537 (Tex. App.—Austin 2002, no pet.). The Texas
Court of Criminal Appeals has explained that, if a portion of the evidence is erroneously admitted,
the accused may complain on appeal of that error, and if the complaint has merit and the error is
reversible, a new trial should be ordered. But jurors do not act irrationally in considering evidence
admitted by the trial court. A reviewing court is obliged to assess the jury's factual findings from
this perspective. See Thomas v. State, 753 S.W.2d 688, 695 (Tex. Crim. App. 1988). However, even
without the videotape, sufficient evidence exists.
            M.H., a friend of C.C., testified she had spent the night with C.C. in the Spring of "1999-2000." After C.C. had fallen asleep but M.H. was still awake, Lewis came into C.C.'s bedroom,
where both girls were sleeping, and touched C.C. underneath the covers. M.H. testified C.C. woke
up and told Lewis to stop and to leave her alone. According to M.H., Lewis responded by hitting
C.C. with the back of his hand and then came over to M.H.'s bed and began touching M.H.'s private
areas and her breasts. Lewis stopped when C.C.'s mother, who is confined to a wheelchair and
cannot enter C.C.'s bedroom, called Lewis from the living room. 
            C.C. testified at trial Lewis began touching her with his hands on "inappropriate spots" when
she was nine years old. When asked how many times Lewis had molested her, C.C. responded "[a]
lot." C.C. testified Lewis had touched her breasts, but was not sure if he had touched them more than
once. C.C. testified Lewis "always" touched inside her privates when he molested her. C.C.
mentioned three places where the abuse would occur: her bedroom, the living room, and Lewis's
bedroom. C.C. testified Lewis would normally molest her in "[h]is room." C.C. discussed a specific
instance when she was ten when Lewis molested her in his bedroom. C.C. also described an assault
which occurred in the living room during which Lewis only touched her privates, but not her breasts.
            Kim Basinger, a registered nurse and a sexual assault nurse examiner employed by Titus
Regional Medical Center, testified she had examined C.C. and discovered abnormal "well-healed
tears to the hymen." Basinger testified she is certified to conduct sexual assault examinations and
is able to distinguish between tears and naturally occurring notches in the hymen. Basinger testified
the tears are consistent with sexual abuse. 
            All of the dates of the offenses found by the jury occurred while C.C. was from the age of
nine and through age eleven. Viewed in the light most favorable to the prosecution, a rational juror
could have concluded Lewis committed at least four counts of aggravated sexual assault during this
period. Based on the evidence introduced, a rational juror could have found beyond a reasonable
doubt that all the elements of four counts of aggravated sexual assault and one count of indecency
with a child were committed during the time period alleged.
            When reviewing a challenge to the factual sufficiency of the evidence to support the
conviction, we are required to determine whether, considering all the evidence in a neutral light, the
jury was rationally justified in finding guilt beyond a reasonable doubt. Zuniga v. State, 144 S.W.3d
477, 484 (Tex. Crim. App. 2004). There are two ways in which we may find the evidence to be
factually insufficient. First, if the evidence supporting the verdict, considered alone, is too weak to
support the jury's finding of guilt beyond a reasonable doubt, then we must find the evidence
insufficient. Id. Second, if—when we weigh the evidence supporting and contravening the
conviction—we conclude the contrary evidence is strong enough that the State could not have met
its burden of proof, we must find the evidence insufficient. Id. "Stated another way, evidence
supporting guilt can 'outweigh' the contrary proof and still be factually insufficient under a
beyond-a-reasonable-doubt standard." Id. at 485. If the evidence is factually insufficient, then we
must reverse the judgment and remand for a new trial. Clewis v. State, 922 S.W.2d 126, 135 (Tex.
Crim. App. 1996).
            When viewed in a neutral light, the contrary evidence is not strong enough that the State
could not have met its burden of proof. Further, after weighing the evidence supporting and
contravening the conviction, a rational juror could have found beyond a reasonable doubt all the
elements of aggravated sexual assault and indecency with a child. Lewis argues that C.C.'s testimony
was confusing and contradictory. Matters concerning an evaluation of credibility and demeanor are
the sole province of the jury. Cain v. State, 958 S.W.2d 404, 408–09 (Tex. Crim. App. 1997). 
Although M.H. testified C.C. awakened and told Lewis to stop, C.C. testified that she did not
remember awakening that night and that she never saw anything happen to M.H. Although Basinger
testified there are "notches" which naturally occur on a hymen, she also testified she was trained to
distinguish between a notch and a tear. C.C. testified Lewis had abused her "[a] lot" and described
assaults which occurred in her bedroom, the living room, and Lewis's bedroom. After weighing the
evidence supporting and contravening the conviction, a rational juror could have found all the
elements of four counts of aggravated sexual assault and one count of indecency with a child beyond
a reasonable doubt. When considered in a neutral light, the evidence is factually sufficient. 
Conclusion
            Lewis failed to preserve error concerning the polygraph evidence, and the introduction of the
letter was within the range of reasonable disagreement. While the introduction of the videotape was
error, the error was harmless. Lewis failed to show he received ineffective assistance of counsel. 
Last, there was sufficient evidence. 
            We affirm the judgment of the trial court.
 

                                                                        Jack Carter
                                                                        Justice
 
Date Submitted:          October 27, 2004
Date Decided:             November 16, 2004

Do Not Publish