COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

HECTOR MACIAS,                                             )

                                                                              )              
No.  08-03-00140-CR

Appellant,                          )

                                                                              )                    Appeal from the

v.                                                                           )

                                                                              )                
384th District Court

THE STATE OF TEXAS,                                     )

                                                                              )           
of El Paso County, Texas

Appellee.                           )

                                                                              )               
(TC# 20020D02570)

                                                                              )

 

 

O
P I N I O N

 

Appellant Hector
Macias appeals his conviction of two counts of aggravated sexual assault of a
child.  The jury found Appellant guilty
of the two counts and assessed punishment for both counts at 5 years= imprisonment in the Institutional
Division, Texas Department of Criminal Justice. 
The trial court ordered the sentences for both counts to run
concurrently.  Appellant raises four
issues on appeal, in which he asserts that: 
(1) the evidence was legally and factually insufficient; (2) he received
ineffective assistance of counsel; (3) the trial court erred in excluding
evidence of the victim=s
prior allegation of sexual abuse; and (4) the State committed prosecutorial
misconduct.  We affirm.

SUMMARY
OF THE EVIDENCE








One evening in
October 2001, Gloria Martinez allowed Appellant, her half-brother, to pick up
her then six-year-old daughter, A.M., from her house and bring A.M. to his
house so that A.M. could try on some clothes that Appellant=s wife was going to give to A.M.  Appellant returned A.M. to her home about two
hours later, but A.M. had not been given any clothes.  Appellant quickly left Ms. Martinez=s house.  A.M. did not say anything.  Ms. Martinez began asking her questions about
the clothes and whether they fit.  At
first, A.M. just looked at her and did not respond.  A.M. then told her they did not fit.  Ms. Martinez asked A.M. if she wanted to talk
and she said no.

On February 9,
2002, after her son Adrian=s
counseling session with Dr. Sixto Gomez at her home, Ms. Martinez asked Dr.
Gomez for a ride to Appellant=s
house in order to pick up a VCR.  Dr.
Gomez drove while Ms. Martinez sat in the front passenger seat and her children
sat in the back.  When Ms. Martinez
mentioned where they were going, she noticed that A.M. became panicked and
abnormally nervous.  Dr. Gomez also
observed that A.M. was becoming very agitated, very nervous, afraid, and
restless.  A.M. repeatedly said she did
not want to get out of the car.  A.M.
asked to talk to Dr. Gomez alone.  Ms.
Martinez and Adrian got out of the car and waited outside while A.M. talked to
Dr. Gomez.








Once they were
alone, A.M. told Dr. Gomez that she was afraid to tell him what had  happened because Appellant had said he would
kill her mother with a knife if she told anyone.  A.M. stated that Appellant had touched her Adown there,@
pointing her finger to her genital area. 
Dr. Gomez asked if she meant her vagina, and she said Ayes.@  A.M. told Dr. Gomez that Appellant took his
clothes off, took her clothes off, and had a knife.  A.M. stated that Appellant told her that if
she said anything, he would kill her mother. 
A.M. told Dr. Gomez that Appellant licked her vagina and then made her lick
his penis and told her to suck on it. 
While A.M. was talking to Dr. Gomez, her speech was very rapid and she
seemed very afraid.  Dr. Gomez told Ms.
Martinez what A.M. had told him.  Dr.
Gomez informed Ms. Martinez that he had to report the outcry of sexual abuse to
Child Protective Services (ACPS@) and that they would notify the
police.

Cynthia Aguilar
with CPS conducted the preliminary interview with A.M.  When A.M. made an outcry of sexual abuse, the
interview was stopped so that she could be videotaped in a full interview.  CPS referred the case to the police on
February 22, 2002.  As part of the police
investigation, A.M. was examined at Sierra Medical Center.  A.M. was not tested for the presence of sperm
or for sexually transmitted diseases. 
The results showed no physical trauma or scarring.  Ms. Aguilar stated that CPS closed its case
after determining that any risk factors that may have been present were under
control, specifically noting that A.M. had been referred to victim=s assistance, was receiving counseling,
and the designated perpetrator no longer had access to the child.

At trial,
seven-year-old A.M. identified Appellant in the courtroom and stated that she
remembered the day Appellant came to her house, picked her up, and took her to
his house.  A.M. recalled that no one
else was at Appellant=s
house--just her and Appellant.  A.M.
stated that bad things happened to her at Appellant=s
house.  A.M. was sitting on the sofa in
Appellant=s
house.  Using an anatomically correct
doll, A.M. explained that Appellant put his penis in her mouth.  Appellant also touched her vaginal area with
his mouth, but not with his penis.  At
one point, Appellant got on top of A.M. and his penis touched her mouth.  Appellant told her not to tell her mother and
A.M. was afraid of him.








A.M. testified
that Appellant had tattoos on his arms, however, Detective Jeff Gordon
testified that he observed no tattoos on Appellant=s
body when he photographed him.  Detective
Gordon did observe scars on Appellant=s
upper arms.  Appellant=s wife also testified that Appellant
did not have any tattoos.  On
cross-examination, A.M. agreed that she had talked to Ms. Aguilar and Dr. Gomez
and that they had told her what to say. 
She also agreed that she had Abeen
practicing a lot to say the right things.@  On redirect, however, A.M. testified that she
was telling the truth in her testimony.

In his testimony,
Dr. Gomez explained his relationship to the Martinez family.  Since May 2000, Dr. Gomez, a licensed
therapist and clinical social worker,had been conducting counseling sessions at
the Martinez home with Adrian, A.M.=s
sibling.  The initial referral was from
the Life Management Center in order to work with Adrian on behavior
modification, anger management, and self-esteem.  Adrian has severe mental retardation, suffers
from epileptic seizures, clubfoot, Attention Deficit Hyperactive Disorder, and
is diagnosed with microcephalia.  It was
Dr. Gomez=s
understanding that Ms. Martinez suffers from depression, auditory
hallucinations, and severe mood disorders. 
He knew that Ms. Martinez had complained that she had been abused as a
child at age five, that a boyfriend of hers had placed a gun to her head, and
that Ms. Martinez claimed to have had out-of-body experiences.  Dr. Gomez believed she was taking
mood-altering drugs.  He agreed that Ms.
Martinez was extremely domineering and overpowering of A.M. and her son.  However, Dr. Gomez explained that this was
expected in single-parent families and that this case fell within those
parameters.  Dr. Gomez agreed that the
family was dysfunctional, but had never noted that A.M. had any tendency to
fantasize or make up stories.  Dr. Gomez
agreed that children, including A.M., are prone to suggestion.








On
cross-examination, Ms. Martinez was questioned about her mental health status
and family relationships.  Ms. Martinez
remembered attending psychiatric services in San Francisco, where she lived
before moving to El Paso in 1999. 
However, she denied any personal involvement with Mental Health and
Mental Retardation (AMHMR@), Life Management, the Kellogg Clinic
in San Elizario, or Texas Tech psychiatric services.  Ms. Martinez stated that she took psychiatric
medication in San Francisco and used to take medication for depression and for
paranoia.  She admitted to taking medication
currently, but denied that she was taking psychiatric medication or still felt
paranoid.  Ms. Martinez denied that she
was still hearing voices in her head, but could not remember when it had
stopped.  Ms. Martinez admitted that she
attended special education classes throughout her academic career and had
limited reading and writing abilities.

In her testimony,
Ms. Martinez denied that she hated her mother, Isabel Morales.  She claimed to have never told anyone that
she hated her mother or had a bad relationship with her mother, but admitted
that she was not close to her family since returning from California.  Ms. Martinez denied ever telling Ms.
Aguilar that there was somebody in the house waiting to rape her.  She also explained that neither of her
children is still involved in Big Brothers Big Sisters.








Several family
members testified on behalf of the defense. 
Appellant=s aunt,
Maria de Jesus Martinez-Rivera, testified that Ms. Martinez held a lot of
hatred for the family and while Ms. Martinez and the children lived with her in
1999, Ms. Martinez said bad things against the family.  According to the aunt, Ms. Martinez was
revengeful towards her mother and was working on a way to get back at her mother
for giving her away.  The aunt also
testified about Ms. Martinez=s
auditory hallucinations and sudden mood swings. 
Appellant=s mother,
Isabel Morales, testified that until April 2001, she had a good relationship
with her daughter.  During one visit with
Ms. Martinez, Ms. Martinez flew into a rage and told her mother to get out of
her life.  Appellant=s wife, Sylvia Macias, testified that
the family had only one vehicle and that she was the primary driver.  On weekdays, she would drop off Appellant at
work, and in the evenings, he would get a ride home from a co-worker.  She did admit, however, that they both have
been known to borrow another car and that there have been times when Appellant
used their car during the week. 
According to Ms. Macias, their daughter is normally home by the time
Appellant arrives home in the evening, therefore after the workday, Appellant
is either at home with her or their daughter.

DISCUSSION

SUFFICIENCY
OF THE EVIDENCE

In Issue One,
Appellant challenges the legal and factual sufficiency of the evidence, arguing
that the State failed to met its burden of establishing that Appellant
committed the alleged offenses beyond a reasonable doubt.  Specifically, Appellant asserts that the
State witnesses provided contradicted evidence and conflicting testimony.  Appellant also argues that the evidence was
insufficient due to the questionable nature of A.M.=s
testimony and the influence that Ms. Martinez=s
family history and mental health condition had on the credibility of A.M.=s allegations.

Standards
of Review








In reviewing the
legal sufficiency of the evidence, we view the evidence in the light most
favorable to the verdict to determine whether any rational trier of fact could
have found the essential elements of the offense beyond a reasonable
doubt.  Jackson v. Virginia, 443
U.S. 307, 319, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979); Burden v.
State, 55 S.W.3d 608, 612 (Tex.Crim.App. 2001).  We do not resolve any conflict of fact, weigh
any evidence, or evaluate the credibility of any witnesses, as this was the
function of the trier of fact.  See
Adelman v. State, 828 S.W.2d 418, 421 (Tex.Crim.App. 1992); Matson v.
State, 819 S.W.2d 839, 843 (Tex.Crim.App. 1991).  Instead, our duty is to determine whether
both the explicit and implicit findings of the trier of fact are rational by
viewing all the evidence admitted at trial in the light most favorable to the
verdict.  See Adelman, 828 S.W.2d
at 421-22.  In so doing, any
inconsistencies in the evidence are resolved in favor of the verdict.  Matson, 819 S.W.2d at 843.

In reviewing the
factual sufficiency of the evidence, we must determine whether considering all
the evidence in a neutral light, the jury was rationally justified in finding
guilt beyond a reasonable doubt.  Zuniga
v. State, 144 S.W.3d 477, 484 (Tex.Crim.App. 2004); see also Clewis v.
State, 922 S.W.2d 126, 129 (Tex.Crim.App. 1996).  There are two ways in which we may find the
evidence to be factually insufficient.  Zuniga,
144 S.W.3d at 484.  Evidence is factually
insufficient when the evidence supporting the verdict, considered alone, is too
weak to support the finding of guilt beyond a reasonable doubt.  Id. 
Evidence is also insufficient when contrary evidence is so strong that
guilt cannot be proven beyond a reasonable doubt.  See id. at 485.  However, in our factual sufficiency review,
we must give appropriate deference to the jury and should not intrude upon its
role as the sole judge of the weight and credibility given to evidence
presented at trial.  See Johnson v.
State, 23 S.W.3d 1, 7 (Tex.Crim.App. 2000); Clewis, 922 S.W.2d at
133.  Accordingly, we are authorized to
set aside the jury=s finding
of facts only in instances where it is manifestly unjust, shocks the
conscience, or clearly demonstrates bias. 
Clewis, 922 S.W.2d at 135. 








Aggravated
Sexual Assault

A person commits
the offense of aggravated sexual assault of a child if he intentionally or
knowingly causes the sexual organ of a child younger than fourteen years of age
to contact or penetrate the mouth, anus, or sexual organ of the actor, or
another person, or causes the penetration of the mouth of a child by the sexual
organ of the actor.  See Tex.Pen.Code Ann. ' 22.021(a)(1)(B)(ii)(iii) &
(2)(B)(Vernon Supp. 2004-05).  Appellant
was convicted of two counts of the charged offense.  

Viewing the
evidence in the light most favorable to the jury, the evidence showed that on
one evening in October 2001, Appellant took his seven-year-old niece A.M. to
his house under the pretense of giving her some clothes.  While they were alone in the house, Appellant
touched A.M.=s sexual
organ by licking her vagina and put his penis in A.M.=s
mouth.  A.M. also said that Appellant got
on top of her and his penis touched her mouth. 
In A.M.=s
testimony, she used anatomically correct dolls to explain what she called the Abad things@
that happened to her in Appellant=s
house.  Dr. Gomez, the outcry witness,
testified that A.M. told him what had happened on February 9, 2002.  Ms. Aguilar also testified that A.M. made an
outcry of sexual abuse during her preliminary interview with CPS.  Under our legal sufficiency standard of
review, any inconsistencies in the evidence are resolved in favor of the
verdict.  See Matson, 819 S.W.2d
at 843.  From the testimony of A.M. and
Dr. Gomez, any rational trier of fact could have found that Appellant committed
the essential elements of two counts of the offense beyond a reasonable
doubt.  We conclude that the evidence was
legally sufficient to sustain Appellant=s
conviction.








Appellant also
asserts in his first issue that the evidence was factually insufficient,
pointing to evidence from which the jury could have inferred that Ms. Martinez=s past history and mental health
condition influenced her daughter and noting that, at the very least, such evidence
significantly undermined the daughter=s
credibility.  Viewing the evidence in a
neutral light, we observe that at trial there was conflicting evidence
concerning the strained nature of Ms. Martinez=s
relationship to her family, however, there was no evidence presented that
Ms. Martinez ever told her daughter or that her daughter even knew about
her past history.  There was also no
evidence that Ms. Martinez ever attempted to influence A.M. in making the
allegation of sexual assault against Appellant. 
In our factual sufficiency review, we do not intrude upon the jury=s role as the sole judge of the weight
and credibility given to the evidence.  See
Johnson, 23 S.W.3d at 7.  After
considering all the evidence in a neutral light, we conclude that the evidence
supporting the verdict is not too weak to support the finding of guilt beyond a
reasonable doubt.  Moreover, we conclude
that the contrary evidence is not so strong that guilt could not be proven
beyond a reasonable doubt.  Having found
that the evidence was both legally and factually sufficient to sustain
Appellant=s
conviction, we overrule Issue One.

PRIOR
ALLEGATION

In Issue Three,
Appellant contends the trial court erred in excluding testimony of a prior
allegation by A.M. of sexual assault by her brother Adrian.  Appellant also asserts that he was denied the
right to effective cross-examination and effective assistance of counsel by the
trial court=s refusal
to admit evidence of the prior allegation.








Before trial
began, Appellant=s counsel
told the trial court that he intended to present evidence that CPS was involved
with the family because Ms. Martinez or A.M. had made a prior allegation that
Adrian sexually abused A.M.  The State
argued that the allegation was reported to CPS after the alleged incident with
Appellant.  In addition, the allegation
was made by an anonymous source on the CPS intake record that said there were
some aunts concerned about the situation. 
The trial court decided to take up the issue of the relevancy of the
evidence during trial outside the jury=s
presence.[1]








In the voir dire
examination of CPS worker Cynthia Aguilar, she testified that prior to the allegation
involving Appellant, there was one allegation in the CPS file of which the
substance was that Adrian had been emotionally abused.  That allegation was Aruled
out.@  Ms. Aguilar was the CPS worker involved in
investigating the second allegation in the CPS file, that is, the allegation
made by A.M. against Appellant.  Ms.
Aguilar testified that a third allegation in the file, the one stating that
Adrian had allegedly molested A.M., was not part of the file when she was
involved with the case, therefore the allegation must have been received after
she closed the case as to the second allegation.  In reviewing the CPS records, Ms. Aguilar
stated that the intake record for the third allegation was dated July 2002,
that the information was anonymously reported, and that it had been Aruled out.@  In further voir dire, Ms. Aguilar was
questioned about a letter she had written which was addressed to Claudia
Tarango, dated April 13, 2002.  She
agreed that it was fair to assume that Ms. Tarango had referred a case over to
her.  Ms. Aguilar also agreed that the
address for Big Brothers Big Sisters was the same as the address listed in the
letter.  In addition, according to notes
in the file, another intake worker at Big Brothers Big Sisters told CPS that
A.M. told him Adrian touched her private parts. 
At the end of the voir dire examination, the trial court did not permit
Appellant to introduce evidence concerning the allegation of sexual abuse made
against Adrian.

Standard
of Review and Applicable Law

The Sixth
Amendment of the U.S. Constitution guarantees the right of an accused in a
criminal proceeding to be confronted with the witnesses against him.  Delaware v. Van Arsdall, 475 U.S. 673,
678, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986); Davis v. Alaska, 415
U.S. 308, 315, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974).  Within this right, as applied to the states
through the Fourteenth Amendment, is a defendant=s
right of cross-examination.  Davis,
415 U.S. at 315-16, 94 S.Ct. at 1110; Pointer v. Texas, 380 U.S. 400,
403, 85 S.Ct. 1065, 1067-68, 13 L.Ed.2d 923 (1965).  A defendant=s
right of cross-examination includes the right to impeach the witness with
relevant evidence that might reflect bias, interest, or prejudice.  Virts v. State, 739 S.W.2d 25, 29
(Tex.Crim.App. 1987).  However, the trial
court retains broad discretion to impose reasonable limits on cross-examination
to prevent harassment, prejudice, confusion of the issues, witness safety, and
introduction of cumulative or collateral evidence.  See Lagrone v. State, 942 S.W.2d 602, 613
(Tex.Crim.App.) cert. denied, 522 U.S. 917, 118 S.Ct. 305, 139 L.Ed.2d
235 (1997); Carroll v. State, 916 S.W.2d 494, 496-97 (Tex.Crim.App.
1996).  We review the trial court=s decision to restrict
cross-examination of a witness under an abuse of discretion standard.  Cantu v. State, 939 S.W.2d 627, 635
(Tex.Crim.App.), cert. denied, 522 U.S. 994, 118 S.Ct. 557, 139 L.Ed.2d
399 (1997).

Rule 608(b)
provides that: 








Specific instances of the conduct of a
witness, for the purpose of attacking or supporting the witness= credibility, other than conviction of
a crime as provided in Rule 609, may not be inquired into on cross-examination
of the witness nor provided by extrinsic evidence.

 

Tex.R.Evid.
608(b).

 

In Lopez v.
State, 18 S.W.3d 220 (Tex.Crim.App. 2000), the Court of Criminal Appeals
rejected a per se exception to Rule 608(b) for sexual offenses, but
acknowledged that this rule may on occasion conflict with an accused=s right of confrontation.  See Lopez, 18 S.W.3d at 225.  Courts must examine each case on an
individual basis to determine whether the Confrontation Clause demands the
admissibility of certain evidence.  Id.  In making this determination, the trial court
should balance the probative value of the evidence sought to be introduced
against the risk its admission may entail. 
Id. at 222.

Prior
Allegation

Appellant contends
the trial court erred in excluding evidence of the victim=s prior allegation of sexual abuse by
her brother Adrian.  Appellant argues on
appeal that the evidence should have been admitted to show that A.M. has
falsely accused others of sexual assault. 
He asserts that the evidence in his bill of exceptions contained Aconcrete evidence that said accusations
were considered false by the investigating agency.@  Appellant also argues that Athere is written documentation that the
agency did not feel further investigation was needed or justified . . . .@ 
We find that the record does not support Appellant=s contention that he offered conclusive
proof that the other allegation was false.








Ms. Aguilar
testified that the third allegation in the CPS files involved A.M.=s brother.  This allegation was received subsequent to
her investigation of the allegation against Appellant.  Ms. Aguilar believed that following an
investigation, the allegation was ruled out and the case was closed.  As part of his bill of exceptions, Appellant
introduced a CPS intake report, which indicates that after telling her mother
about the sexual abuse by Appellant, A.M. had also told the caller that A>SB
[her brother] used to touch her private parts, but not any longer since she is
telling her MO [mother] now.=@ 
The report states that no details were known regarding the sexual abuse
by A.M.=s
sibling.  The report also states that A[i]t is unknown if it was an isolated
incident.@  In its conclusions, the report noted that the
alleged sexual abuse by A.M.=s
brother was A[a]t an
unknown time@ and that
the brother Ais still
in the home, but is at such a low level of functioning, that it is possible
that he did not realize what he was doing at the time.@  According to the report, the case was
upgraded to a AP1@ because the brother was still in the
home.

Ms. Aguilar=s testimony provides the only evidence
concerning the final disposition of the CPS investigation into the allegation.  In her testimony, Ms. Aguilar failed to
provide the agency=s
reasoning for ruling out the allegation involving A.M.=s
brother or for closing the investigation. 
Ms. Aguilar=s
testimony that the case was Aclosed@ and the allegation was Aruled out@
does not necessarily establish the invalidity of the allegation, since the
intake report also noted that A.M. was currently seeing a counselor and that
her mother was now being very protective of her.  As in Lopez, the disposition may
indicate a lack of evidence to prove the allegation at that time, or an
administrative decision to close the case despite the allegation=s validity.  See Lopez, 18 S.W.3d at 225-26.  Without proof that the allegation involving
A.M.=s brother
was false, this evidence had little, if any probative value, but the risk of
undue prejudice and jury confusion in admitting such evidence was high.  Therefore, we conclude the trial court did
not err in refusing to admit evidence of the allegation of sexual abuse of A.M.
by her brother which was contained in the CPS files.  Issue Three is overruled.

 








PROSECUTORIAL
MISCONDUCT

In Issue Four,
Appellant complains that the State committed prosecutorial misconduct in this
case by eliciting testimony from Detective Joe Zimmerly about a statement
Appellant may have given to police in violation of the motion in limine and by
commenting during the State=s
closing argument on Appellant=s
right not to testify.

We examine claims
of prosecutorial misconduct on a case-by-case basis.  Stahl v. State, 749 S.W.2d 826, 830
(Tex.Crim.App. 1988); Perkins v. State, 902 S.W.2d 88, 96
(Tex.App.--El Paso 1995, no pet.). 
Prosecutorial misconduct has been found where:  (1) the prosecutor=s
actions deliberately violated an express court order; (2) where the prosecutor=s misconduct was so blatant as to
border on being contumacious; and (3) where the prosecutor asked a question
which was clearly calculated to inflame the minds of the jury and was of such a
character so as to suggest the impossibility of withdrawing the impression
produced.  See Stahl, 749 S.W.2d
at 831; Huffman v. State, 746 S.W.2d 212, 218 (Tex.Crim.App. 1988); Perkins,
902 S.W.2d at 96. 

To preserve error
for prosecutorial misconduct, the appellant must (1) make a timely and specific
objection, (2) request an instruction to disregard the matter improperly placed
before the jury, and (3) move for mistrial. 
See Tex.R.App.P.
33.1; Cook v. State, 858 S.W.2d 467, 473 (Tex.Crim.App. 1993); Perkins,
902 S.W.2d at 96.

Examination
of Detective Zimmerly








During direct
examination, the prosecutor questioned Detective Zimmerly about the steps he
took in proceeding with his investigation of the case.  Detective Zimmerly explained that after
determining he had probable cause to arrest Appellant, he obtained an affidavit
and arrest warrant and filed the warrant in the department=s warrants office.  Since Appellant was living outside his
jurisdiction, Detective Zimmerly contacted the El Paso County Sheriff=s Office to assist in the arrest.  Detective Zimmerly testified that Appellant
was arrested and the charge was for aggravated sexual assault.  The prosecutor then asked the detective if he
had any further involvement in the case after Appellant was arrested.  Detective Zimmerly replied, AYes. 
I went to the jail and met with him in an attempt to get a written
statement from him, or interview with him.@  Appellant objected on grounds that the
prosecutor violated the court=s
order on the motion in limine and moved for mistrial.  The trial court denied the motion for
mistrial, but granted Appellant=s
request for a curative instruction and instructed the jury not to take into
consideration for any purpose whatsoever the officer=s
statement about going to the jail to interview Appellant and attempting to get
a statement from him.

Reviewing the
prosecutor=s
question in context of the line of questioning, we cannot find that the
prosecutor deliberately violated an express court order or instruction.  The question was clearly not intended to
elicit additional information about statements made by Appellant which were the
subject of the motion in limine. 
Moreover, there is no evidence that the prosecutor=s question was clearly calculated to
inflame the minds of the jury or that it was of such a character so as to
suggest the impossibility of withdrawing the impression produced.  Ordinarily, a prompt instruction to disregard
will cure error associated with an improper question and answer.  Ovalle v. State, 13 S.W.3d 774, 783
(Tex.Crim.App. 2000).  We conclude that
the instruction to disregard given to the jury was sufficient to cure any harm
from the detective=s
statement.  We overrule this portion of
Appellant=s
complaint in Issue Four.

Comment
on Appellant=s Right
Not to Testify








Appellant also
contends that prosecutorial misconduct occurred during the State=s closing argument in the
guilt-innocence phase of trial when the prosecutor commented on the reasons why
a defendant would decide not to testify. 
Specifically, Appellant complains about the following exchange:

The
State:         The evidence comes from the
witnesses on the stand, okay? Comes from A.M. and from Sixto Gomez.  And sure, there are some other witnesses that
may come up, police officers, CPS, whatever, but remember this case is about
A.M. and what she went through.  And what
she=s continued, from the preliminary
interview to the forensic interview, to testify before you today, she has
continued to say that this man did these things to me.

And remember defense
counsel says, Well, you know, we may not want somebody to testify because they=re uneducated as opposed to a seasoned
attorney.  Is that--

 

Defense:           Your Honor, I=m
going to object.  She=s getting into the defense=s right not to testify and that=s improper.

 

The
State:         I=m
answering his argument, Judge.  And I=m not going to say anything about--

 

Defense:           I would request an instruction.

 

The
Court:        I didn=t hear that but I=ll sustain the objection.

 

The
State:         Thank you, Judge.

Just that there are risks when you put
up a seasoned attorney--

 

Defense:           Your Honor, I=m
going to again have to object.  She=s getting into him not testifying.

 

The
State:         That=s
what you argued.

 

The
Court:        Well, just move along.

 

Defense:           She=s
inferring.  It=s
not our burden.

 

The
Court:        All right.








The
State:         Our--is that any different
for the child witness in this case? I mean, does she have more education than
--

 

Defense:           Your Honor, again, she=s inferring to my client=s right not to testify due to
self-incrimination.

 

The
State:         No, no, no.

 

The
Court:        Hold on.  Hold on. 
Don=t make
any reference in violation of the Court=s
instructions, Ms. Compton.

 

The
State:         No, Your Honor.  And I=m
talking about A.M. and her testimony on cross.

 

Defense:           Your Honor, she=s doing it simply by application, by
testifying the child would have done, why not him.  It=s
an inferred--

 

The
Court:        She will not get into the
area in violation of the Court=s
charge.  Go ahead, Ms. Compton. 

 

The record shows that although
Appellant timely objected to the alleged comment on his decision not to testify,
which the trial court sustained, he did not obtain a ruling on his request for
a curative instruction and did not move for mistrial.  Appellant has not properly preserved his
complaint for appellate review.  See
Tex.R.App.P. 33.1; Cook,
858 S.W.2d at 473.








Even assuming that
Appellant=s
complaint had been properly preserved, the prosecutor=s
comment was not an improper comment on Appellant=s
failure to testify.  Prosecutorial
comments on a defendant=s
failure to testify violate both the state and federal constitutions and Article
38.08 of the Texas Code of Criminal Procedure. 
See Bustamante v. State, 48 S.W.3d 761, 765 (Tex.Crim.App. 2001);
Tex.Code Crim.Proc.Ann. art.
38.08 (Vernon 1979).  The language of an
alleged comment must be manifestly intended or of such character that the jury
would naturally and necessarily consider it to be a comment on the failure of
the accused to testify.  Bustamante,
48 S.W.3d at 765.  The comment must be
viewed from the jury=s
standpoint and the implication that the comment referred to the defendant=s failure to testify must be
clear.  Id.  It is not sufficient that the language might
be construed as an implied or indirect allusion to the accused=s right to remain silent.  Id. 
The comment at issue made no clear reference to Appellant=s failure to testify.  In fact, Appellant=s
counsel argued that the reference was to be inferred from the prosecutor=s comment.  We find that the language of the comment was
insufficient to establish improper jury argument as the basis for Appellant=s prosecutorial misconduct claim.  Issue Four is overruled in its entirety.

INEFFECTIVE
ASSISTANCE OF COUNSEL

In Issue Two,
Appellant contends he was denied effective assistance of counsel because his
counsel:  (1) failed to exercise his
peremptory strikes properly during voir dire; (2) failed to admit
cross-examination evidence concerning Ms. Martinez=s
use of psychiatric services during her stay in San Francisco, California; (3)
failed to request a curative instruction and move for a mistrial with respect
to the improper comment on Appellant=s
decision not to testify; and (4) failed to properly investigate exculpatory
evidence in the case.








We review claims
of ineffective assistance of counsel under the two-prong test set out by the
United States Supreme Court in Strickland v. Washington, 466 U.S. 668,
104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and adopted by Texas in Hernandez v.
State, 726 S.W.2d 53, 57 (Tex.Crim.App. 1986).  To carry his burden under the first prong,
the appellant must show that trial counsel=s
performance was deficient, that is, counsel=s
representation fell below an objective standard of reasonableness.  Thompson v. State, 9 S.W.3d 808, 812
(Tex.Crim.App. 1999); Strickland, 466 U.S. at 687-88, 104 S.Ct. at
2064.  The appellant must next show that
counsel=s
deficient performance prejudiced his defense. 
Strickland, 466 U.S. at 687, 104 S.Ct. at 2064; Jackson v.
State, 877 S.W.2d 768, 771 (Tex.Crim.App. 1994).  This requires the appellant to show there is
a reasonable probability that, but for counsel=s
unprofessional errors, the result of the proceeding would have been
different.  Strickland, 466 U.S.
at 694, 104 S.Ct. at 2068; Jackson, 877 S.W.2d at 771.  A reasonable probability is a probability
sufficient to undermine confidence in the outcome.  Strickland, 466 U.S. at 694, 104 S.Ct.
at 2068; Jackson, 877 S.W.2d at 771.

In reviewing
claims of ineffective assistance, we must indulge a strong presumption that
counsel=s conduct
falls within the wide range of reasonable professional assistance and the
appellant must overcome the presumption that the challenged conduct might be
considered sound trial strategy.  Thompson,
9 S.W.3d at 813; Strickland, 466 U.S. at 689, 104 S.Ct. at 2065.  Any allegation of ineffectiveness must be
firmly founded and affirmatively demonstrated in the record to overcome this
presumption.  Thompson, 9 S.W.3d
at 813; see Jackson, 877 S.W.2d at 771. 
When faced with a silent record as to counsel=s
strategy, this Court will not speculate as to the reasons for counsel=s actions.  See Jackson, 877 S.W.2d at 771.  The defendant bears the burden of proving
ineffective assistance by a preponderance of the evidence.  Thompson, 9 S.W.3d at 813.








In the present
case, Appellant filed a motion for new trial, which raised an allegation of
ineffective assistance of counsel.  At
the hearing on the motion, Appellant claimed his counsel was ineffective for
the following reasons:  failing to call a
material witness, Jay J. Armes; failing to investigate the case, specifically
the complainant=s mother=s history of sexual abuse allegations;
and the CPS videotaped interview of the complainant.  On appeal, Appellant raises additional
allegations of ineffective assistance that were not presented at the hearing,
thus the record reveals some, but not all of counsel=s
trial strategy for the now challenged actions or omissions.

Failure
to Exercise Peremptory Strikes Properly

Appellant first
contends that his trial counsel failed to conduct a proper voir dire because
his counsel intended to strike Prospective Juror No. Six, Ms. Mendoza, but she
was mistakenly left on the jury panel for the case.  Trial counsel realized the mistake after making
the allotted peremptory strikes and requested an additional strike after the
jury had been selected.  The trial court
denied counsel=s
request.  Appellant asserts that Ms.
Mendoza=s
presence on the jury was prejudicial because during voir dire, Ms. Mendoza
indicated that she sought accountability as the goal of punishment.[2]  Appellant also notes that Ms. Mendoza had
informed the trial court that her daughter was a social worker for Child
Protective Services.  However, during
further voir dire questioning, Ms. Mendoza stated that her daughter had told
her nothing about this case, that her family relationship did not lead her to
favor one side or another, that she would listen to all the evidence before
making a decision, and could be a fair juror. 
There is nothing in the record to indicate any bias or impartiality on
the part of this juror.  Appellant has
failed to show how trial counsel=s
performance during voir dire, even if it were regarded as deficient, prejudiced
his defense or would have changed the outcome of the trial.  Therefore, Appellant has not met his burden
of showing ineffective assistance of counsel on this ground.








Failure
to Introduce Evidence

Appellant next
asserts that his trial counsel provided ineffective assistance by failing to
properly admit cross-examination evidence concerning Ms. Martinez=s use of psychiatric services during
her stay in San Francisco, California. 
During cross-examination, Ms. Martinez at one point testified that she
remembered attending psychiatric services in San Francisco, and that she took
psychiatric medication in San Francisco, but she later testified that she did
not remember receiving psychiatric care in San Francisco.  Defense counsel attempted to introduce a
letter from the Golden Gate Regional Center dated May 4, 1999, which was
addressed to Ms. Martinez.  The trial
court sustained the State=s
objection to admission of the letter.








Appellant argues
that his counsel=s failure
to admit this evidence on the matter of Ms. Martinez=s psychiatric history demonstrated
counsel=s
inability to represent him properly in establishing the witness=s bias, motive, and underlying
psychological problems.  To the contrary,
the record shows that ample evidence of Ms. Martinez=s
psychiatric history was introduced at trial. 
Appellant=s trial
counsel cross-examined Dr. Gomez extensively on the subject of
Ms. Martinez=s mental
health and psychiatric problems.  Dr.
Gomez testified that Ms. Martinez suffers from depression, auditory
hallucinations, and severe mood disorders. 
Dr. Gomez stated that Ms. Martinez has been in special education classes
all of her life, had previously complained that she had been abused as a child,
had reported being threatened by a boyfriend with a gun, had claimed to have
had out-of-body experiences, and was taking mood-altering drugs.  Dr. Gomez testified that he understood Ms.
Martinez=s mental
health condition to be a chronic and lifelong ailment.  Maria de Jesus Martinez-Rivera, Ms. Martinez=s aunt, also testified about
Ms. Martinez=s mental
health condition.  Ms. Martinez-Rivera
testified that Ms. Martinez was Amental@ when she went to pick her up in San
Francisco and bring her back to El Paso in 1999.  Ms. Martinez and her children lived with her
aunt for eight months.  During that time,
Ms. Martinez would hear voices and would see and talk to an
apparition.  Ms. Martinez-Rivera also
described to the jury the sudden mood swings she observed in Ms. Martinez=s behavior.  Given the admission of similar evidence to
establish Ms. Martinez=s
mental health condition as it may have affected her credibility, Appellant has
failed to show that trial counsel=s
performance was deficient by failing to introduce the particular contradicting
evidence in his complaint.

Failure
to Properly Object to Improper Jury Argument

Appellant next
argues that his trial counsel provided ineffective assistance by failing to
preserve error with respect to the improper comment during the State=s closing argument on Appellant=s decision not to testify.  This complained-of comment was discussed in
our disposition of Issue Four.  The
record shows that Appellant=s
trial counsel objected to the alleged comment and requested a curative instruction,
which was not given.  Trial counsel did
not move for a mistrial and therefore, the error, if any, was not properly
preserved for appellate review.  However,
as we noted in our discussion of Issue Four, even assuming that the complaint
had been properly preserved, the comment did not constitute an improper comment
because there was no clear implication that the comment referred to Appellant=s failure to testify.  Therefore, trial counsel=s performance was not deficient for
failing to obtain a curative instruction and to move for a mistrial.  Appellant has failed to met his burden of
showing ineffective assistance on this ground.

Failure
to Investigate Exculpatory Evidence








In his final
ground, Appellant contends that his trial counsel failed to investigate
exculpatory evidence.  Appellant argues
that J.J. Armes, a private investigator hired by Appellant=s family to find evidence of his
innocence, had secured evidence that indicated that he was wrongly
convicted.  Appellant complains that his
trial counsel knew that this evidence existed, but failed to subpoena the
evidence or Mr. Armes.  Appellant also
argues that trial counsel=s
performance was deficient in failing to seek the videotaped CPS interview of
A.M, which contained both inculpatory and exculpatory evidence.

At the motion for
new trial hearing, Jesus Olivas, co-defense counsel, testified that when he was
retained to represent Appellant, he was informed that Mr. Armes had been
previously hired by the family to do an independent investigation.  Mr. Olivas believed that Mr. Armes had a
recording or audiotape, but he never saw or heard it.  Appellant=s
defense team attempted to talk to Mr. Armes, but found him to be very
uncooperative and he did not produce copies of the information purportedly in
his file.  Mr. Olivas stated that Awe were never able to get to the point
with Mr. Armes that I would be satisfied in knowing what he was going to be
testifying to, what he was going to be--what he was going to be--essentially,
we didn=t know
what he would say on the stand.@  He explained that the decision not to call
Mr. Armes as a witness was a trial strategy and a risk to the defense because
of Mr. Armes= lack of
cooperation and their lack of knowledge as to what he would say in his
testimony.








Mr. Olivas also
explained his trial strategy in deciding not to present the CPS videotape to
the jury.  Mr. Olivas had an opportunity
to review the videotape and believed that it would have been more beneficial to
the prosecution than the defense.  As
part of trial strategy, Mr. Olivas anticipated keeping this evidence out
if the State had attempted to introduce it. 
In Mr. Olivas=
opinion, the videotape would not have helped the defense and would have been
yet one more opportunity for the same allegation to be repeated.  Further, Mr. Olivas believed that the issue
about the victim being coached was addressed during cross-examination at trial.

Mr. Olivas= testimony indicates that trial counsel=s decision to limit the scope of their
investigation with regard to the complained-of exculpatory evidence was part of
a sound trial strategy.  Appellant has
failed to overcome the presumption that counsel=s
conduct falls within the wide range of reasonable professional assistance.  Appellant has failed to met his burden in
showing that trial counsel rendered ineffective assistance on any of the
grounds asserted in his brief. 
Accordingly, we overrule Issue Two in its entirety.

Having overruled
all of Appellant=s issues
for review, we affirm the trial court=s
judgment.

 

 

 

March
10, 2005

DAVID WELLINGTON
CHEW, Justice

 

Before Panel No. 2

Barajas, C.J., McClure, and Chew, JJ.

 

(Do Not Publish)











[1]
During cross-examination of Dr. Gomez, Appellant=s
counsel attempted to question Dr. Gomez about his knowledge of other
allegations by A.M. against another uncle and her brother.  The State objected on relevancy grounds.  The trial court ruled that evidence of an
allegation would not be allowed until it received testimony from Ms. Aguilar
outside the presence of the jury.





[2]
During voir dire, the State prosecutor asked the venire panel with which of
three theories of punishment (accountability, retribution, deterrence) they
most agreed.  Of the thirteen jurors
selected for the panel, eight had also selected accountability as the theory of
punishment with which they most agreed and two agreed with all three theories
of punishment.